ORONOZ, DEMANDANTE Y APELADO, *v.* ROMÁN, DEMANDADO Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de Aguadilla en
pleito sobre terminación de comunidad de bienes.

No. 1680.—Resuelto en diciembre 14, 1917.

COMUNIDAD DE BIENES—DIVISIÓN DE COMUNIDAD—EXCEPCIÓN PREVIA DE FALTA
DE HECHOS PARA DETERMINAR UNA CAUSA DE ACCIÓN.—Examinada la demanda se resolvió que aducía hechos suficientes para determinar una causa de
acción sobre terminación de comunidad de bienes.

ID.—JURISDICCIÓN—VALOR DE LA COSA SOBRE QUE VERSA EL PLEITO.—En una demanda sobre terminación de una comunidad de bienes presentada en una
corte de distrito, no es necesario alegar el valor de los bienes para dar autoridad a la corte para conocer del pleito ya que los tribunales de distrito
en esta isla son cortes de jurisdicción general.

APLAZAMIENTO DEL JUICIO—SUSPENSIÓN POR FALTA DE PRUEBA—REQUISITOS DE LA
MOCIÓN.—No basta para cumplir con el artículo 202 del Código de Enjuiciamiento Civil que la parte que solicita el aplazamiento del juicio por
falta de prueba haga la petición jurada y en ella alegue que la prueba era
esencial y no pudo obtenerse no obstante la diligencia de la parte, y ofrezca

evidencia para demostrar tales aseveraciones; sino que es necesario que alegue hechos demostrativos de la importancia esencial de la prueba y también de que se ha practicado la debida diligencia para obtenerla.

SENTENCIA—LECTURA EN CORTE ABIERTA—BUENA PRÁCTICA.—Es una buena práctica anunciar en corte abierta las sentencias dictadas, pero tal requisito no es absolutamente necesario para la validez de las mismas.

DEMANDA—ENMIENDAS A LA DEMANDA—DISCRECIÓN JUDICIAL.—Las cortes de justicia tienen amplia discreción para permitir al demandante enmendar su demanda en el mismo acto del juicio, sobre todo cuando la enmienda en nada varía los términos en que el problema jurídico fué planteado desde el principio y no existe el más leve motivo para pensar que pudiera perjudicar al demandado.

COMUNIDAD DE BIENES—DIVISIÓN DE COMUNIDAD—CUESTIONES SOMETIDAS A Y DECIDIDAS POR LA CORTE.—Lo que en verdad quedó finalmente envuelto y se discutió y se sometió por las partes a la corte en este pleito, fué si el demandante tenía o no el dominio del 96 por ciento de la finca y si el demandado era o no el dueño de toda la finca o simplemente del 4 por ciento, y si el asunto quedaba resuelto a favor del demandante, entonces si debía o no decretarse la división de la finca y en qué forma. *Se decidió:* que, bajo tales circunstancias, no cometió error la corte de distrito al resolver por su sentencia todas las cuestiones que le fueron finalmente sometidas.

ID.—ID.—TESTIGOS CONOCEDORES DE LA FINCA.—En una demanda sobre división de comunidad de bienes no es error fundamental el admitir declaraciones de testigos conocedores de la finca para mostrar cuáles eran sus condiciones topográficas a los efectos de decidir si dicha finca desmerecería al dividirse en dos porciones.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Juan García Ducós y Luis Llorens Torres.*

Abogados del apelado: *Sres. Reichard & Reichard.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

La demanda en este caso se titula "sobre terminación de comunidad de bienes" y en ella se alegan los siguientes hechos:

1. Que demandante y demandado son mayores de edad, etc.

2. Que demandante y demandado son los únicos interesados y dueños en común y proindiviso, en la proporción de un noventa y seis por ciento el primero y un cuatro por ciento el segundo, de toda la finca que se describe a continuación: (Se describe en efecto una finca de cuarenta y seis cuerdas y media.)

3. Que el antes reseñado inmueble se halla libre de toda carga o gravamen y obra inscrito en el registro de la propiedad del distrito en el tomo 35 de San Sebastián, al folio 210 vuelto el condominio del demandante y al 211 vuelto el del demandado.

4. Que ni las partes en este pleito, ni sus causantes han celebrado pacto, convenio o contrato alguno de conservar indivisa la finca rústica ya deslindada.

5. Que contra la voluntad del actor, el demandado se ha apoderado y viene disfrutando de la totalidad del inmueble deslindado en el hecho segundo, percibiendo y apropiándose cuantos frutos, rentas, beneficios y utilidades produce, sin entregar al demandante la parte proporcional que de ellos le corresponde.

6. Que el demandado se opone a la división de la cosa común y a que se adjudique a uno de los condueños, indemnizando éste al otro, y

7. Que de partirse materialmente el terreno en cuestión, las porciones resultantes sufrirán demérito y desproporción.

Basándose en esos hechos el demandante solicitó de la corte que decretara la división de la finca, y en el caso de que ésta no pudiera llevarse a efecto, que ordenara su venta en pública subasta dividiéndose proporcionalmente el precio entre los condueños.

El demandado alegó que la demanda no aducía hechos suficientes para determinar una causa de acción y que la corte no tenía jurisdicción por razón de la materia. Ambas excepciones fueron declaradas sin lugar y el demandado archivó su contestación aceptando los hechos primero y cuarto de la demanda, negando los otros, y alegando como materia nueva, en resumen, que estaba en posesión de la totalidad de la finca y que era el dueño absoluto de ella por haberla adquirido en pública subasta, por adjudicación en pago, a consecuencia de cierto pleito que siguió contra el anterior dueño de la misma; que él y sus causantes han poseído por más de treinta años, y que si el demandante adquirió el condo-

minio a que se refiere en su demanda, lo fué con fecha posterior a la adquisición del demandado y de personas que ni eran dueños, ni estaban en posesión del inmueble.

Trabada así la contienda, se señaló el 31 de agosto de 1916 para la vista. En dicho día el demandado pidió la suspensión, se opuso el demandante y la corte desestimó la solicitud del demandado.

El demandante pidió permiso para enmendar la demanda adicionando al hecho segundo las palabras "valorada en tres mil dollars" y a la súplica las palabras "ordenando su división en la forma que estime adecuada." El demandado se opuso y la corte permitió la enmienda.

Entonces se procedió a la práctica de las pruebas y finalmente la corte dictó sentencia declarando "terminada la comunidad de bienes inmuebles solicitada" y ordenando "la venta en pública subasta del dicho inmueble y la correspondiente distribución proporcional del precio así obtenido entre las partes en este pleito, en la proporción del 96 por ciento del valor total al demandante y el 4 por ciento del dicho valor al demandado. Sin especial condena de costas."

La sentencia aparece "Dada en Cámara, en Aguadilla, P. R., hoy dos de noviembre de 1916." Firmada por el juez; certificada por el secretario, y registrada en el libro de sentencias de la corte.

El 2 de diciembre de 1916 el demandado apeló. Luego consta de los autos que el 9 de enero de 1917 se dió lectura en corte abierta a la sentencia hallándose presentes los abogados de ambas partes, y que el 29 de enero de 1917 el demandado alegando que la lectura de la sentencia en corte abierta constituía una enmienda verificada fuera de término, pidió que la actuación de la corte fuera reconsiderada, dejándola sin efecto, a fin de que quedara subsistente la sentencia tal y como fué dictada. La corte negó la solicitud del demandado.

Archivada la transcripción de los autos en esta Corte

Suprema, se celebró la vista del recurso y el caso quedó definitivamente sometido a nuestra consideración y resolución.

En su alegato la parte apelante sostiene que la corte sentenciadora erró: 1, porque declaró sin lugar las excepciones previas; 2, porque negó la suspensión de la vista; 3, porque dictó en cámara la sentencia; 4, porque la enmendó fuera de término; 5, porque resolvió implícitamente, dentro de un pleito de "terminación de comunidad de bienes," una preferencia de títulos; 6, porque declaró sin lugar la prescripción alegada por el demandado; 7, porque apreció indebidamente la prueba; 8, porque permitió al demandante enmendar su demanda en el mismo acto del juicio, sin haber notificado ni dado traslado a la parte contraria, y 9, porque permitió que se probara la divisibilidad o indivisibilidad de una cosa por medio de testigos.

1. Examinemos el primer error. Se alega en la demanda, en resumen, que el demandante y el demandado son dueños en común de cierta finca y que el demandado ha violado las reglas de la comunidad apoderándose del inmueble y apropiándose de todos sus productos, por virtud de lo cual el demandante pide que la comunidad sea disuelta. Si esos hechos se examinan a la luz del artículo 399 del Código Civil que dice que hay comunidad cuando la propiedad de una cosa o de un derecho pertenece proindiviso a varias personas, y a la del 407 del mismo cuerpo legal que prescribe que ningún propietario está obligado a permanecer en la comunidad, pudiendo pedir en cualquier tiempo que se divida la cosa común, se concluirá sin esfuerzo alguno que estuvo justificada la corte de distrito al declarar sin lugar la primera de las excepciones del demandado.

También lo estuvo al declarar sin lugar la segunda porque siendo la de distrito de Aguadilla una corte de jurisdicción general, no era necesario que se alegara en la demanda el valor de la cosa sobre que versa el pleito para que quedara establecida su autoridad para conocer del mismo. Véase el

caso de *Lowande* v. *García,* 13 D. P. R. 271, en donde se trata ampliamente esta cuestión.

2. El demandado pidió la suspensión del juicio porque intentaba presentar como prueba cierta certificación del Tesorero de Puerto Rico y la declaración de un testigo que le había sido imposible obtener no obstante haber ejercitado la debida diligencia para ello.   La parte contraria se opuso porque si bien se aseguraba que la declaración del testigo era esencial, no se expresaba por qué, ni se alegaba el motivo por el cual no había podido comparecer el testigo, y en cuanto a la certificación porque el demandado había tenido amplio tiempo para obtenerla, no obstante lo cual estaba conforme con que se concediera un término al demandado para presentarla con tal de que no se suspendiera el juicio, ya que había traído todos sus testigos.   La corte negó la suspensión.

Una moción para transferir un juicio por falta de prueba, dice el Código de Enjuiciamiento Civil en su artículo 202, sólo puede hacerse mediante declaración escrita y jurada demostrando la importancia esencial de la prueba con que se cuenta, y que se ha practicado la debida diligencia para obtenerla.

La petición del demandado fué jurada y en ella se alega que la prueba que no había podido obtenerse, no obstante la diligencia de la parte, era esencial.   También se consigna en el pliego de excepciones lo que sigue: "y ofreció prueba para demostrar tales aseveraciones."   Pero eso no basta. Para cumplir con la ley es necesario alegar en la moción hechos demostrativos de la importancia esencial de la prueba y también de que se ha practicado la debida diligencia para obtenerla.

En su alegato la parte apelante se limita a expresar que se le causaron graves perjuicios al no permitírsele la práctica de una prueba de tal importancia, pero nada expresa que nos permita juzgar si en realidad de verdad era o no importante la evidencia.

3. Los errores señalados con los números 3, y 4, pueden considerarse conjuntamente.

Una sentencia, según está definida por la misma ley, es la decisión definitiva sobre los derechos de las partes en un pleito o procedimiento. Artículo 188 del Código de Enjuiciamiento Civil. El secretario deberá llevar, con el protocolo de la corte un libro que se titulará "Libro de Sentencias," en el cual se registrarán éstas, dice el mismo código en su artículo 231.

En el presente caso se celebró un juicio en corte abierta y el pleito quedó sometido a la corte. Luego ésta archivó su sentencia por escrito decidiendo definitivamente los derechos de las partes, y el secretario la registró en el libro de sentencias. El hecho de que en la sentencia aparezcan las palabras: "Dada en Cámara," no tiene importancia a nuestro juicio.

Es una buena práctica anunciar las sentencias dictadas en corte abierta, pero tal requisito no es absolutamente necesario para la validez de las mismas. Si el juicio se celebra debidamente y el caso queda sometido a la corte y ésta luego archiva su sentencia por escrito y el secretario la registra en el libro de sentencias, queda cumplido todo lo que la ley exige.

4. El error marcado con el número 8, no existe. Las cortes de justicia tienen amplia discreción en materia de enmiendas. Además, en este caso las enmiendas eran innecesarias y no existe el más leve motivo para pensar que pudieran perjudicar al demandado. Ya hemos dicho que la demanda era suficiente sin que fijara el precio de la finca y que, aceptando como ciertas sus alegaciones, el demandante tenía derecho a pedir como pidió la división de la finca. El agregar, por virtud de la enmienda, la petición de que esa división se ordenara en la forma que estimara adecuada la corte, en nada varió los términos en que el problema fué planteado desde el principio. Las reglas que deben seguirse para la división de la comunidad, las fija el mismo legislador. Véase

el artículo 409 del Código Civil, los siguientes y sus concordantes del mismo código.

5. Los errores 5, 6, 7 y 9, o sean los que se refieren a haberse resuelto en este pleito una cuestión de prelación de títulos, a no haberse sostenido la defensa de prescripción alegada por el demandado, a haberse apreciado indebidamente la prueba y a haberse aceptado la prueba de testigos para demostrar la indivisibilidad de la finca, los estudiaremos conjuntamente.

La demanda presenta un caso de división de una cosa poseída en común. La contestación, alegando en su materia nueva el derecho exclusivo del demandado por virtud de haber comprado la totalidad de la finca, presentó el caso bajo un aspecto distinto.

A nuestro juicio no es de decisiva importancia para la resolución de este pleito la cuestión de si el demandante calificó debidamente la acción que estableció en la corte de distrito de Aguadilla. Véase el caso de *Aponte et al. v. Verdiales,* 24 D. P. R. 353. El demandante alegó que era dueño de un condominio de un noventa y seis por ciento en determinada finca rústica que poseía en común con el demandado, dueño a su vez de un condominio de un cuatro por ciento, y pidió la división de la comunidad. El demandado alegó que él era dueño de la totalidad de la finca, no de un condominio de un cuatro por ciento. Así quedó trabada la contienda. No se trata de un procedimiento especial, como el de desahucio, por ejemplo, sino de un pleito ordinario. El demandado no rehusó entrar en la investigación de los títulos. La prueba fué amplia y la verdadera cuestión en disputa fué bien entendida por ambos contendientes. Lo que en verdad está envuelto y se discutió y se sometió por las partes a la corte en este pleito fué si el demandante tenía o no el dominio del noventa y seis por ciento de la finca y si el demandado era o no el dueño de toda la finca o simplemente del cuatro por ciento, y si el asunto quedaba decidido en

favor del demandante, entonces si debía o no decretarse la división de la finca y en qué forma.

La prueba del demandante, documental y testifical, demuestra que en la escritura de partición de los bienes de doña Rosa García, otorgada en San Sebastián, el 28 de junio de 1878, ante el Notario Eusebio de Arce, se adjudicó la finca a que se refiere este pleito, a Antonio, Celestino, Cristina, Luisa y Victoriana Cardona y García, hijos de doña Rosa. Antonio, Cristina, Luisa y Victoriana entregaron la finca a su hermano Anacleto Cardona para que aprovechándose de sus productos cuidara a uno de los condueños de la misma. Celestino Cardona, que había perdido la razón. El 26 de septiembre de 1901 falleció en estado de soltería el dicho Celestino y fueron declarados sus herederos por la Corte de Distrito de Mayagüez el 29 de octubre de 1903 sus hermanos Antonio, Cristina, Luisa, Victoriana y Anacleto, correspondiendo a cada uno una quinta parte del veinte por ciento que pertenecía a Celestino. Las proporciones de los condominios quedaron así: Antonio, Cristina, Luisa y Victoriana un veinte y cuatro por ciento cada uno, y Anacleto, un cuatro por ciento. Después de la muerte de Celestino y de la declaratoria de herederos, Antonio, Cristina, Luisa y Victoriana permitieron que su hermano Anacleto, que era pobre, continuara viviendo en la finca y disfrutara de sus productos con la obligación de que pagara las contribuciones. La participación de 24 por ciento correspondiente a Antonio fué adjudicada a su hijo José Ramón Cardona Lugo, según consta de la escritura de partición de bienes otorgada el 2 de febrero de 1915 ante el Notario Blasco Pagán. La participación de 24 por ciento correspondiente a Cristina, se adjudicó también a su hijo José Torres Cardona, por escritura de partición otorgada el 4 de febrero de 1915 ante el Notario José D. Rodríguez. Finalmente, por escritura de 9 de marzo de 1916 otorgada ante el Notario Arturo Reichard, Victoriana y Luisa y José Ramón Cardona y José Torres vendieron sus participaciones al demandante Joaquín Oronoz Ro-

, dón, quien inscribió su condominio de 96 por ciento en el registro de la propiedad en 18 de marzo de 1916. Los documentos a que nos hemos referido anteriormente también constan inscritos en el registro de la propiedad desde el 7 de enero de 1916. Como se ve la prueba del demandante presenta un caso a su favor enteramente claro.

La prueba del demandado demuestra que el dicho demandado José Tomás Román radicó una demanda en cobro de 1,800 dólares el primero de agosto de 1913 contra Anacleto Cardona; que el demandado fué emplazado y no habiendo comparecido se dictó sentencia contra él en rebeldía el 13 de diciembre de 1913; que se libró ejecución para satisfacer la sentencia y en cumplimiento de ella el márshal, en 6 de marzo de 1914, vendió en pública subasta la finca de que se trata en este pleito, como de la propiedad del deudor Anacleto Cardona al demandado José Tomás Román, y que éste, en diciembre de 1914, inició una información de dominio de la finca de referencia, en mayor cabida, habiéndose opuesto Luisa Cardona, José R. Cardona y José Torres y hallándose a la fecha de las pruebas pendiente de resolución.

Por medio de su otra prueba, el demandado intentó demostrar que Anacleto Cardona fué dueño de toda la finca. La parte que pudiera considerarse más importante de esa prueba, es la declaración del dicho Anacleto Cardona quien aseguró primero que la finca perteneció toda a su hermano Celestino y luego admitió que fué heredada de sus padres no sólo por Celestino sino por sus otros hermanos, y quien aseguró también que hacía unos doce años, días después de la muerte de Celestino, sus hermanos le vendieron la finca otorgándole un documento pero que no podía presentarlo porque se le había perdido. La declaración de Anacleto, que no obstante haber rematado la finca desde unos tres años antes el demandado continuaba viviendo en ella, fué contradicha por la declaración bajo juramento de su hermana Luisa Cardona.

La prueba del demandado demuestra, pues, que el márshal

le vendió la totalidad de la finca como de la propiedad de Anacleto Cardona, dos años antes de iniciarse este pleito. La corte sentenciadora llegó a la conclusión de que existió evidencia de una combinación fraudulenta entre el demandado y Anacleto Cardona, pero no creemos que los indicios que pueden observarse sean suficientes para demostrar la existencia del fraude. Partiremos de la base de que el demandado actuó de buena fe.

Por virtud de la compra él adquirió todos los derechos de Anacleto Cardona y nada más. ¿Era Anacleto Cardona dueño de la totalidad de la finca o simplemente condueño de un cuatro por ciento adquirido por herencia de su hermano Celestino? La prueba en cuanto a este extremo es por completo deficiente. Ya hemos visto la propia declaración de Anacleto, vaga, incierta, que fué impugnada, además, por otras declaraciones, entre ellas, según ya hemos consignado, por la de su hermana Luisa.

Frente a esa prueba deficiente, está la clara y completa historia del título del demandante, título que consta inscrito en el registro.

Bajo tales circunstancias se impone como única conclusión la de la corte sentenciadora; esto es, que quedó plenamente evidenciado que el demandante es dueño de un condominio de un 96 por ciento de la finca en cuestión y que el demandado es dueño de otro condominio de un 4 por ciento.

Destruída la eficacia del título del demandado a la totalidad de la finca, reducido a sus justos límites dicho título, volvemos al caso sencillo que presentó el demandante en su demanda: una finca perteneciente en común y proindiviso a dos personas, una de las cuales no quiere continuar en la comunidad y solicita la división de la cosa.

Dicha división debe decretarse. ¿En qué forma? El demandante presentó prueba testifical tendente a demostrar que la finca ·desmerecería si se dividía en dos porciones. La corte asistida de las partes practicó, además, una inspección ocular. Parece que la finca tiene un frente muy estrecho a

la carretera y no podría dividirse dando salida a dicha carretera a las dos porciones.   Basada en la evidencia, la corte, de acuerdo con lo dispuesto en el artículo 413 del Código Civil, ordenó que la finca fuera vendida y repartido su precio entre los condueños.

No creemos que la corte errara al admitir declaraciones de testigos conocedores de la finca para mostrar cuáles eran sus condiciones topográficas, que la corte tuvo además ocasión de observar por sí misma.   Convenimos en que personas expertas hubieran podido aportar mayor luz, pero no creemos que se cometiera error fundamental alguno.

Por virtud de todo lo expuesto opinamos que se ha impartido justicia substancial en este caso y por tanto que debe confirmarse la sentencia apelada.

*Confirmada · la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf y Hutchison.

Los Jueces Sres. Presidente Hernández y Asociado Aldrey no intervinieron.