JUNTA DE DIRECTORES CONDOMINIO MONTEBELLO, demandante y recurrente, *v.* LOURDES FERNÁNDEZ, demandada y demandante contra tercera recurrida, *v.* ÁNGEL A. RIVERA; EVERETT BELVILLE y OTROS; JUNTA DE DIRECTORES CONDOMINIO MONTEBELLO, demandantes y recurrentes, *v.* CARLOS ROGER, JELINA ROGER, ETC., demandados y demandantes contra terceros recurridos, *v.* ÁNGEL A. RIVERA, EVERETT BELVILLE y OTROS, terceros demandados.

*Número:* CE-93-697       *Resuelto:* 31 de mayo de 1994

*Mario A. Beauchamp*, abogado de los recurrentes; *Rafael Santos Del Valle*, abogado de los recurridos.

El Juez Asociado Señor Fuster Berlingeri emitió la opinión de Tribunal.

Nos toca resolver si una parte interesada puede iniciar por su cuenta un procedimiento judicial para poner en vigor una orden válida emitida por el Departamento de Asuntos al Consumidor o si ello es prerrogativa exclusiva de ese departamento.

I

El 9 de octubre de 1990 Ludmilia Rivera Burgos, propietaria del apartamento D-408 del Condominio Montebello de Trujillo Alto, presentó una querella ante el Departamento de Asuntos del Consumidor (D.A.Co.). Alegó que varios condóminos habían alterado la fachada del edificio ilegalmente.

Para atender la aludida querella, D.A.Co. convocó a las partes a una vista administrativa que fue celebrada el 15 de febrero de 1991. Comparecieron a dicha vista la querellante, el vicepresidente de la junta de directores del condominio, acompañado por su abogado, el administrador del condominio y otro condómino. A base de la prueba desfilada y de las estipulaciones acordadas, D.A.Co. determinó que varios titulares del condominio, por su cuenta, habían instalado puertas y ventanas exteriores diferentes a las originales, habían cerrado balcones y habían ampliado áreas cerradas de los apartamentos, alterando así la fachada comunal del edificio en violación al Art. 15(d) de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291m(d). D.A.Co. también determinó que la junta de directores del condominio no había tomado acción alguna en relación con las alteraciones aludidas, y que hizo caso omiso al deber que le

fijaba el Art. 38-D(a) e (i) de dicha ley, 31 L.P.R.A. sec. 1293b-4(a) e (i), de proceder en contra de los condóminos que habían alterado la fachada comunal ilegalmente.

El 25 de febrero de 1991 D.A.Co. emitió una resolución en la cual ordenó a la junta de directores del condominio que tomara todas las acciones legales necesarias para lograr que cesasen y se corrigiesen las alteraciones de fachada en cuestión. Además, D.A.Co. le impuso a la junta la obligación de notificar dicha resolución a todos los titulares del condominio. Le apercibió que, de no cumplir con lo ordenado, D.A.Co. podría imponerle una multa administrativa de hasta $10,000.

La resolución de D.A.Co. concluía con una advertencia de que las partes afectadas por ésta podían presentar reconsideración dentro del plazo de veinte (20) días, a partir de la fecha de notificación de dicha resolución, y les informaba los términos y procedimientos para la revisión judicial de la resolución.

Días más tarde, el 5 de marzo de 1991, el presidente de la junta de directores del condominio le escribió a los condóminos. Les envió una copia de la resolución de D.A.Co.; les reiteró la obligación que existía de corregir las alteraciones ilegales de fachada; le notificó a cada condómino la alteración ilegal particular que había realizado, si alguna; les indicó que si estaban en desacuerdo con lo ordenado por D.A.Co. tenían veinte (20) días para presentar su reconsideración ante dicha agencia, y les citó a una asamblea extraordinaria de los condóminos, el 13 de marzo de ese año, para allí determinar el término dentro del cual los condóminos en cuestión debían corregir las alteraciones.

La asamblea extraordinaria de los condóminos finalmente se celebró el 27 de marzo de 1991, luego de una segunda convocatoria. Allí, el representante legal del presidente de la junta, que había asistido a la vista ante D.A.Co., contestó las preguntas de los condóminos sobre la

orden de dicho departamento y les reiteró su deber de cumplir con la misma o solicitar su reconsideración.

El 29 de abril de 1991 el presidente de la junta de directores le escribió a los dueños de apartamentos que habían realizado alteraciones ilegales y les solicitó que corrigiesen dichas alteraciones dentro de los noventa (90) días siguientes. También les reiteró su derecho de acudir a D.A.Co. para solicitar reconsideración si no estaban conformes con la orden de corregir las alteraciones. El 10 de junio de 1991, el presidente de la junta volvió a escribirle a los condóminos en cuestión para reiterarles lo expresado en su carta anterior.

Finalmente, el 19 de agosto de 1991, el representante legal del presidente de la junta le escribió a los dueños de los apartamentos aludidos para notificarles que, si no corregían las alteraciones ilícitas durante los próximos sesenta (60) días, la junta habría de tomar los pasos necesarios para hacer cumplir lo ordenado por D.A.Co. Se les advertía, además, que serían responsables de los gastos en que incurriese la junta para hacer valer la orden de D.A.Co. Esta carta fue enviada certificada con acuse de recibo a veintidós (22) de los veinticuatro (24) condóminos que habían realizado alteraciones en la fachada. Uno de éstos había corregido las alteraciones y otro había acudido a D.A.Co., por lo que no se les envió dicha carta.

A pesar de las gestiones realizadas por la junta de directores, la gran mayoría de los condóminos que habían realizado alteraciones ilegales en la fachada hizo caso omiso de la orden de D.A.Co. y de los diversos requerimientos de la junta. Ello dio lugar a que el 16 de noviembre de 1991 la junta solicitase formalmente la intervención de D.A.Co. para que se pusiese en vigor la Orden de 25 de febrero. D.A.Co. nunca contestó dicha solicitud de intervención.

El 17 de octubre de 1992 la Junta de Directores del Condominio Montebello volvió a solicitar la intervención de D.A.Co. en este asunto. Para esta fecha dos (2) condóminos

habían hecho las reparaciones pertinentes y tres (3) habían comparecido ante D.A.Co. Por eso se le solicitó a este departamento que instruyese a los otros diecinueve (19) condóminos a cumplir con su orden.

D.A.Co. tampoco contestó esta segunda solicitud de intervención que le hizo la junta de directores del condominio. Sin embargo, en una comunicación dirigida a uno de los condóminos que acudió a D.A.Co., el Secretario Auxiliar para Asuntos Legales de dicha agencia le informó a dicho condómino lo siguiente:

> En su gestión para hacer cumplir la Orden [de D.A.Co. de 25 de febrero de 1991] la Junta de Directores no puede acudir al Departamento. Dicha gestión deberá hacerla ante el foro judicial. Anejo XVI, pág. 22.

En vista de la inacción por parte de D.A.Co., la junta de directores del condominio entabló una acción judicial para hacer cumplir su orden y el 17 de marzo de 1993 demandó en el Tribunal Superior, Sala de Carolina, a dos (2) de los titulares que no habían corregido su alteración a la fachada ni recurrido a D.A.Co. La junta solicitó en sus demandas que el tribunal ordenara a los demandados a corregir su alteración a la fachada y a restituirla a su estado original, más el pago de costas y honorarios de abogado.

Los demandados, por su parte, presentaron demanda contra tercero contra los miembros de la junta de directores. Alegaron que ésta había sido selectiva al demandar sólo a algunos de los condóminos por las alteraciones a las fachadas y le imputaron otras actuaciones supuestamente ilícitas.

Luego de varios trámites procesales, el tribunal de instancia desestimó todas las referidas acciones por entender que carecía de jurisdicción para considerarlas. De esa determinación acudió ante nos la junta de directores mediante petición de *certiorari* presentada el 22 de noviembre de 1993, en la cual se alegaba, en síntesis, que el foro a quo había errado al desestimar las dos (2) demandas originales

por falta de jurisdicción. El 4 de febrero de 1994, mediante resolución, le concedimos término a la parte recurrida para que mostrara causa por la cual no se debía revocar la sentencia de instancia en cuanto a la desestimación de las dos (2) demandas originales. Dicha parte compareció el 8 de marzo de 1994.

## II

La única cuestión ante nos es determinar si el tribunal de instancia tenía jurisdicción para atender la solicitud de la Junta de Directores del Condominio Montebello de que se le ordenase a los demandados a cumplir con la orden de D.A.Co. relativa a la alteración de la fachada realizada por éstos. Dicho tribunal decidió que no tenía tal jurisdicción, por entender que sólo D.A.Co. tiene autoridad para procurar que se ponga en vigor judicialmente una orden administrativa suya como la de marras. Determinó el foro de instancia que:

> Cuando DACO ejerce su jurisdicción exclusiva sobre un asunto, emite una orden y ésta es incumplida, la parte interesada no puede iniciar un procedimiento separado ante el Tribunal Superior para requerir de éste que ponga en vigor la orden administrativa. Anejo I, pág. 6.

El tribunal sentenciador no fundamentó su novel dictamen detalladamente o a fondo. Se limitó sólo a citar unas breves expresiones nuestras en *D.A.Co. v. Alturas Fl. Dev. Corp. y otro*, 132 D.P.R. 905 (1993), en la que señalamos de pasada que el trámite judicial mediante el cual D.A.Co. procura poner en vigor sus órdenes es parte integral del trámite ante dicha agencia que dio lugar a la orden administrativa que se desea hacer valer judicialmente. El foro de instancia supuso[1] que si D.A.Co. tenía jurisdicción pri-

---

[1] El caso *D.A.Co. v. Alturas Fl. Dev. Corp. y otro*, 132 D.P.R. 905 (1993), no era uno que tuviese nada que ver con la cuestión de jurisdicción primaria exclusiva de D.A.Co. Se trata esencialmente de un caso sobre la doctrina de descorrer el velo

maria exclusiva para atender el problema sobre el condominio, también era exclusivamente suya la facultad de hacer valer judicialmente las órdenes administrativas resultantes, ello en vista de que uno y otro trámite son parte integral de un mismo procedimiento. Dicha suposición, sin embargo, no es correcta. Veamos por qué.

## III

■ Como se sabe, los foros judiciales de Puerto Rico son tribunales *de jurisdicción general*. Como tal tienen autoridad para entender en cualquier causa de acción que presente una controversia propia para adjudicación. Son fundamentalmente distintos de los tribunales de *jurisdicción limitada*, que sólo pueden conocer de asuntos que expresamente les sean conferidos por ley. Para privar a un tribunal de jurisdicción general de su autoridad para entender en algún asunto particular, es necesario que así se haya dispuesto expresamente en algún estatuto o que ello surja del mismo por implicación necesaria. *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153 (1980); *Rosado v. Registrador*, 71 D.P.R. 553 (1950); *Oronoz v. Román*, 26 D.P.R. 25 (1917); *Antonetti et al. v. Foot et al.*, 16 D.P.R. 590 (1910); *Coll et al. v. Rigo*, 16 D.P.R. 319 (1910); *Lowande v. García*, 13 D.P.R. 271 (1907); 13 *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction*, Sec. 3522, págs. 60–65 (2da ed. 1984). Véanse, también: *Noriega v. Gobernador*, 122 D.P.R. 650 (1988); *Vélez Ruiz v. E.L.A.*, 111 D.P.R. 752 (1981); *Fine Art Wallpaper v. Wolff*, 102 D.P.R 451 (1974).

■ Conforme al aludido principio general de derecho,

---

corporativo. Como el mismo se inició mediante una querella ante el Departamento de Asuntos del Consumidor (D.A.Co.), que luego dicha agencia intentó hacer valer judicialmente, hicimos unas breves expresiones sobre la relación que existe entre un procedimiento y el otro. Nada de lo allí expresado, sin embargo, de modo alguno sostiene lo resuelto por el tribunal de instancia en este caso. No hay siquiera una alusión a ello. Por lo tanto, la determinación de instancia es pura suposición suya.

el tribunal de instancia en el caso ante nos estaría impedido de ver la acción en cuestión por falta de jurisdicción únicamente si así ello se ha dispuesto claramente por ley. Un análisis cuidadoso de la legislación pertinente, sin embargo, revela que no existe tal impedimento. Ni la Ley Orgánica del Departamento de Asuntos del Consumidor (Ley Orgánica de D.A.Co.), Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341 *et seq.*), que crea a D.A.Co. y define sus poderes y responsabilidades, ni la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291 *et seq.*, que reglamenta lo pertinente a condominios, prohíben que la junta de directores de un condominio pueda incoar una acción judicial para hacer valer una orden de D.A.Co., cuando dicha agencia ha declinado ponerla en vigor a través de los tribunales. Tampoco lo hace la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2101 *et seq.*

■ En efecto, las tres (3) leyes aludidas tienen disposiciones explícitas y detalladas relativas casi exclusivamente a la *revisión judicial* de las órdenes administrativas. Muy poco disponen, en particular, sobre la facultad especial de la agencia para hacer valer dichas órdenes judicialmente, y nada señalan o intiman sobre la *exclusividad* de tal facultad.[2] La Ley Orgánica de D.A.Co. sí tiene una disposición que autoriza al Secretario a recurrir al Tribunal Superior para solicitar que se ponga en vigor cualquier orden de cesar y desistir emitida por él o cualquier orden correctiva, 3 L.P.R.A. sec. 341*l*(e), lo que evidentemente establece la autoridad para que D.A.Co. pueda procurar poner en vigor judicialmente órdenes ad-

[2] La ausencia de una disposición expresa, dándole facultad exclusiva a la agencia para hacer valer sus órdenes judicialmente, es de por sí bastante indicativo de que dicha facultad no existe. En el derecho norteamericano, de donde hemos adoptado nuestro entramado de agencias administrativas, es claro que la cuestión de la exclusividad depende de que dicha facultad haya sido claramente concedida por estatuto. Véanse: *Amalgamated Workers v. Edison Co.*, 309 U.S. 261 (1940); 2 *Am. Juris. 2d Administrative Law* Sec. 524, pág. 512 (1994).

ministrativas como la de marras. Pero, por sus propios términos, dicha disposición es de naturaleza *potestativa* y de ningún modo establece una función que tenga carácter exclusivo.

■ Por otro lado, debe notarse que la Ley de la Propiedad Horizontal le impone a la junta de directores de un condominio el deber especial de velar por que se cumplan las normas relativas a los elementos comunes generales del inmueble, y expresamente la autoriza a cumplir y a hacer cumplir las disposiciones de dicha ley y del reglamento del inmueble. 31 L.P.R.A. sec. 1293b-4(a) e (i). Tales disposiciones de dicha ley pueden razonablemente interpretarse como una autorización a recurrir a los tribunales en casos como el de autos. Ello es particularmente así en vista de que la Ley Orgánica de D.A.Co. le da la facultad a dicha agencia de imponer multas administrativas por violaciones a sus órdenes, y D.A.Co. había apercibido a la junta de directores en este caso de que, si no realizaban las gestiones necesarias para que se corrigiesen las alteraciones ilegales de fachada en cuestión, se le impondría a la junta una multa de hasta $10,000. La junta, pues, estaba sujeta a un mandato válido de D.A.Co., y como dicha agencia optó por no poner en vigor ella misma la orden de marras, la junta no tenía otra alternativa que acudir al foro judicial para así cumplir no sólo con el deber que le fijaba la Ley de la Propiedad Horizontal, sino también con la propia orden de D.A.Co. Si el foro judicial no estuviese disponible en casos como éste, evidentemente se frustrarían importantes políticas públicas como las contenidas en las dos (2) leyes aludidas. La implantación efectiva de esas políticas públicas, pues, milita en contra de suponer que el remedio judicial en cuestión está disponible exclusivamente para D.A.Co., particularmente cuando no hay nada en la legislación pertinente que permita concluir que se quiso restringir de tal forma la jurisdicción que de otro modo tendrían los tribunales para entender en este asunto.

# IV

■■■■ Es cierto, como resolvió el ilustrado tribunal de instancia, que en Puerto Rico existe la doctrina de la jurisdicción primaria exclusiva que reconoce que determinado organismo administrativo será el único con jurisdicción original para atender determinados asuntos. Los propósitos del legislador al conferir jurisdicción primaria exclusiva al organismo administrativo son bien conocidos. Se persigue suplir un procedimiento ágil y sencillo, poco costoso, que atienda el asunto sin el rigor procesal que generalmente ha caracterizado a los tribunales tradicionales. Otras veces, dicha jurisdicción responde al objetivo de ofrecer el beneficio de los más entendidos en las materias altamente técnicas que se discuten. *Srio. D.A.C.O. v. J. Condóminos C. Martí*, 121 D.P.R. 807 (1988); *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398 (1980); *Pérez Ríos v. Hull Dobbs*, 107 D.P.R. 834 (1978). Pero la doctrina de la jurisdicción primaria exclusiva se refiere únicamente a la cuestión de cuál foro tiene *inicialmente* la facultad para dilucidar la controversia en cuestión. *P.R. Amer. Ins. Co. v. P.R. Park. System*, 108 D.P.R. 106 (1978). Por sus propios términos, se trata de una doctrina que determina cuál es el foro apropiado para proceder *primero. No es una doctrina que excluya toda intervención judicial en una controversia.*

En el caso ante nos, cuando se acudió al foro judicial ya la agencia administrativa había decidido inicialmente la controversia de marras. Ya había intervenido la agencia especializada y se había dilucidado expeditamente el asunto. Se habían cumplido ya, pues, con el tenor y los propósitos de la doctrina de la jurisdicción primaria exclusiva. No procedía, pues, invocar a ésta para denegar la acción judicial incoada. Dicha doctrina no tiene eficacia para privar al foro judicial de jurisdicción cuando lo que se solicita es precisamente hacer valer una orden administrativa. La referida doctrina sencillamente no

viene al caso. *P.R. Amer. Ins. Co. v. P.R. Park System*, supra, pág. 111.

## V

Para concluir nuestro análisis, es menester resaltar que en el pasado hemos sido muy cautelosos en relación a cuestiones precisamente como la que tenemos ahora ante nos, acerca de la supuesta ausencia de jurisdicción de un tribunal respecto a un asunto por su tangencia con las funciones de un organismo administrativo. Hemos sido renuentes a aceptar la carencia de jurisdicción, excepto en aquellos casos en los enales el legislador la ha decretado en un lenguage sin ambages. Tal ha sido nuestra posición en decisiones relativamente recientes, tales como *P.R. Amer. Ins. Co. v. P.R. Park. System*, supra, y *Ferretería Matos v. P.R. Tel. Co.*, supra.

Nuestra renuencia a determinar ausencia de jurisdicción en estos casos es una concomitancia obligada de nuestra concepción de que, de ordinario, los tribunales de justicia están llamados a resolver los casos y controversias que se presentan ante ellos, concepción que tiene su origen en la disposición constitucional que establece el poder judicial. *Vélez Ruiz v. E.L.A.*, supra. Resolver de otra forma atentaría contra el esquema normativo básico que define el rol y las funciones de los tribunales de justicia en una sociedad como la nuestra.

## VI

En resumen, pues, el tribunal de instancia tenía jurisdicción para atender las acciones presentadas por la parte demandante.(³)

---

(³) El planteamiento de los recurridos de que no se les dio la oportunidad de ser oídos ante D.A.Co. y que por ello se ha violado el debido proceso de ley, de ser válido,

En vista de ello, por las razones expuestas *se dictará sentencia en conformidad, revocatoria de la del Tribunal Superior, Sala de Carolina, de 22 de octubre de 1993, en lo que se refiere a la desestimación de dichas acciones.*

El Juez Asociado Señor Rebollo López concurrió sin opinión escrita.

---

ha de atenderse en instancia. Es decir, en los procedimientos judiciales, para considerar y resolver la acción de la parte demandante, los demandados, *si tienen derecho a ello,* tendrán amplia oportunidad para ser oídos, presentar evidencia, tener acceso a la documentación que sea procedente y todos lo otros derechos que garantiza el debido proceso de ley. También tendrán la oportunidad de dilucidar si lo anterior subsana cualquier omisión lesiva de sus derechos en que haya incurrido D.A.Co., si alguna existiese.