La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Ante nos comparece la Sra. Antonia Rivera García (en adelante, la peticionaria) y nos solicita que revoquemos una recalificación realizada por la Registradora de la Pro-piedad de la Sección III de Bayamón, Hon. Namyr Hernán-dez Sánchez. En esta, la Registradora denegó la anotación del derecho a hogar seguro que solicitó la peticionaria al amparo de la Ley Núm. 195-2011 (31 LPRA sees. 1858-1858k).
Este caso nos provee la oportunidad de expresarnos por primera vez en cuanto a la naturaleza y alcance del dere- *632 cho a hogar seguro que se reconoció en la Ley Núm. 195-2011. En específico, debemos determinar si para inscribir el derecho que reconoce ese estatuto en una propiedad que es parte de una comunidad hereditaria es necesario que comparezcan a la autorización del Acta Notarial todos los cotitulares de esta.
Previo a resolver esta controversia, pasemos a exponer los hechos que le dieron génesis.
I
Los hechos de este caso son sencillos. La peticionaria es una residente del municipio de Bayamón y en el presente vive en lo que fue su hogar conyugal. Al fallecer su esposo Alberto Rodríguez Salas, la peticionaria pasó a ser dueña en común proindiviso de la mencionada propiedad junto a sus hijos, por ser estos los herederos de su fenecido esposo.
Así las cosas, el 2 de octubre de 2012 la peticionaria le requirió al notario público Luis J. Marín Rodríguez que au-torizara un Acta Notarial para que se anotara en el Registro de la Propiedad su derecho a hogar seguro de acuerdo con la Ley Núm. 195-2011. El Acta Notarial procedió a autorizarse ese mismo día mediante la Escritura Número Dieciséis (16), titulada “Acta de edificación y acta para anotar derecho a hogar seguro”. Surge de los autos que el notario público re-quirió a la peticionaria que compareciera a la autorización del Acta, lo cual hizo en carácter de requirente.
Autorizada el Acta, el 3 de octubre de 2012 se presentó la misma en la Sección III del Registro de la Propiedad de Bayamón. Posteriormente, el 9 de noviembre de 2012 la Registradora de la Propiedad denegó la inscripción y noti-ficó vía fax la falta siguiente:
LA PROPIEDAD PERTENECE A UNA COMUNIDAD HERE-DITARIA, POR LO QUE LOS CO-HEREDEROS [sic] CO-TITULARES [sic] DEBEN CONSENTIR A ESTA TRANS-ACCIÓN.
*633 Insatisfecha, el 29 de noviembre de 2012 la peticionaria presentó a través de su representación legal un Escrito de Recalificación en el que argumentó que exigir la compare-cencia de todos los cotitulares iría contra el texto de la Ley Núm. 195, supra, y que sería muy oneroso anotar su dere-cho a hogar seguro para los titulares de propiedades bajo un régimen de comunidad de bienes. Además, adujo que por tratarse de un derecho sui géneris, no había objeción alguna que pudieran anteponer los cotitulares.
Posteriormente, el 17 de enero de 2013 la Registradora de la Propiedad denegó el Escrito de Recalificación presen-tado por la peticionaria. La Registradora sostuvo que como la propiedad en cuestión era parte de una comunidad he-reditaria, un cotitular no podía actuar sin el consenti-miento expreso de los demás cotitulares. Además, la Regis-tradora razonó que para anotar el derecho a hogar seguro al amparo de la Ley Núm. 195, supra, debe existir
[...] el consentimiento expreso de los co-titulares [sic] a que éste [sic] derecho se anote a su favor y NO a favor de los [sic] todos los co-titulares [sic], puesto que éstos perderían el dere-cho de solicitarlo en sus propiedades a tenor con el Art. 10 de la Ley.(1)
Aún inconforme, el 6 de febrero de 2013 la peticionaria presentó el Recurso Gubernativo de autos y alegó que la Registradora de la Propiedad cometió el error siguiente:
Erró la Registradora al negarse a inscribir el derecho a hogar seguro de la recurrente, so pretexto de no haber comparecido al acta los coherederos, cotitulares de la propiedad, en contra-vención a lo dispuesto en la Ley de Hogar Seguro, y la Ley Notarial y su reglamento. Recurso Gubernativo, pág. 4.
Contando con la comparecencia de ambas partes, esta-mos en posición de resolver sin ulterior trámite.
*634 II
A. Es indudable que el derecho a la propiedad es de alto interés público en nuestro ordenamiento. De hecho, podría decirse que la génesis del concepto del Estado como el ente jurídico que conocemos hoy surge de teorías políticas que aspiraban a dar una máxima protección al derecho de los individuos a defender y disfrutar su propiedad. Véase R.A. Goldwin, John Locke, en: L. Strauss y J. Cropsey, History of Political Philosophy, 3ra ed., Chicago/Londres, The University of Chicago Press, 1987, págs. 486-488. Sin embargo, el concepto en sí mismo de lo que comprende el derecho a la propiedad ha variado con el paso del tiempo. Véase J.R. Vélez Torres, Curso de derecho civil: los bienes, los derechos reales, San Juan, [s. Ed.], 1983, T. II, págs. 67-74.
La importancia del derecho a la propiedad en nuestro ordenamiento es de tal magnitud que una sección específica de nuestra Constitución establece varias protecciones de este. Primero, el disfrute de la propiedad es uno de los pocos que nuestra Constitución explícitamente dis-pone como de carácter fundamental. Véase Art. II, Sec. 7, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 296. Además, “[n]inguna persona será privada de su [...] propiedad sin debido proceso de ley [...]”. Id. Por último, se establece constitucionalmente que “[1] as leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo”. íd.
Este Tribunal también ha sido enfático en reconocer la primacía del derecho a la propiedad en Puerto Rico. Véase Soc. Gananciales v. G. Padín Co., Inc., 117 DPR 94 (1986). Sin embargo, también hemos determinado que el disfrute de la propiedad no representa un derecho absoluto, por lo que este está limitado por intereses sociales apremiantes y normas de convivencia social. Véase López y otros v. A.E.E., 151 DPR 701 (2000).
*635 Amparados en estas disposiciones constitucionales, y ante la innegable primacía del derecho a la propiedad en nuestro ordenamiento jurídico, la Asamblea Legislativa ha actuado afirmativamente en varias ocasiones para proteger el llamado derecho a hogar seguro. La primera legislación que reconoció este derecho se tituló “Ley para Definir el Hogar Seguro y para Extentarlo [sic] de una Venta Forzosa” y fue aprobada en 1903. Este estatuto protegía la cantidad de quinientos ($500) dólares que estarían exentos de embargo una vez se ejecutara una sentencia contra la propiedad de un demandado. Véase González v. Corte Municipal, 54 DPR 18 (1938). El estatuto fue derogado por la Ley Núm. 87 de 3 de mayo de 1936, estableciéndose que el derecho a hogar seguro de los ciudadanos se limitaba a la cantidad de mil quinientos dólares ($1,500). 31 LPRA sec. 1851. En el 2003, la Asamblea Legislativa enmendó ese estatuto para aumentar la protección de hogar seguro a quince mil dólares ($15,000).
Luego de la crisis económica que han experimentado gran parte de los países del mundo desde finales de la pa-sada década, la Asamblea Legislativa entendió necesario proveer una protección mayor a los propietarios que la can-tidad provista por las últimas enmiendas a los estatutos que establecían el derecho a hogar seguro. Por esa razón, en el 2011 la Asamblea Legislativa aprobó la Ley Núm. 195, supra.
A diferencia de otras jurisdicciones en Estados Unidos, hay una marcada tendencia de los puertorriqueños a ser propietarios de sus viviendas. De hecho, según la Exposi-ción de Motivos de la Ley Núm. 195, supra, en Puerto Rico la tasa de adquisición de viviendas sobrepasa el setenta por ciento (70%). Ello a diferencia de otros estados, en donde el porcentaje de adquisición no alcanza el cuarenta por ciento (40%).
Por ello, la Asamblea Legislativa entendió necesario extender una protección mayor al derecho a la propiedad en *636 casos de cobro de deudas. Según la Exposición de Motivos de la Ley Núm. 195, supra, la Legislatura estimó que “para muchos puertorriqueños su hogar representa casi la tota-lidad de su patrimonio y lo único que pueden ofrecer a sus herederos”. Así, la Rama Legislativa manifestó que enten-día “conveniente aprobar una nueva legislación de van-guardia sobre hogar seguro que brinde una mayor protec-ción al hogar o residencia principal de todos los domiciliados en Puerto Rico y sus respectivas familias”.
Mediante la Ley Núm. 195, supra, la Asamblea Legislativa cambió marcadamente el enfoque del derecho a hogar seguro en nuestro ordenamiento. Como vimos, los estatutos anteriores que reconocieron la existencia de este derecho se enfocaban en darle un valor estrictamente monetario a la propiedad. Es por eso que por más de un siglo el derecho a hogar seguro en Puerto Rico se limitaba a establecer una cuantía de dinero que estaría exenta de ser embargada por los acreedores.
A contrario sensu, la Ley Núm. 195, supra, no se enfoca necesariamente en proteger una cantidad de dinero de embargo, sino que se diseñó con la intención de proteger la propiedad física de los titulares. Es decir, al ser conscientes del valor patrimonial y sentimental que tiene el techo y el hogar para los propietarios en Puerto Rico, la Asamblea Legislativa decidió convertir el derecho a hogar seguro en un vehículo de protección específica en cuanto al disfrute físico del hogar.
Podemos comprobar este interés legislativo al dar una lectura a los Arts. 3 y 5 de la Ley Núm. 195, supra, 31 LPRA sees. 1858 y 1858b. El primero de estos establece que
[t]odo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la es-tructura enclavada en el mismo, o una residencia bajo el régi-men de la Ley de Condominios que le pertenezca o posea le- *637 galmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal. 31 LPRAsec. 1858.
Vemos entonces claramente la intención legislativa de crear un derecho individual en cuanto al hogar seguro, pero limitándolo solamente a aquella propiedad que sea utilizada por el titular como su residencia principal.
Por otro lado, el Art. 5 del estatuto delimita la extensión de la protección que establece el derecho a hogar seguro. Específicamente provee ese artículo lo siguiente:

Protección contra embargo, sentencia o ejecución

Este derecho protege a la propiedad de embargo, sentencia o ejecución ejercitada para el pago de todas las deudas, excepto las deudas reconocidas como excepciones en la sec. 1858a de este título. 31 LPRA sec. 1858b.
Como se puede apreciar, el derecho protege a la propie-dad física de ser embargada o ejecutada como pago de toda deuda. Al enfocarse en el concepto de deuda, la Asamblea Legislativa enmarcó el derecho en el escenario de los acto-res principales de nuestro Código Civil en los capítulos de contratos y obligaciones: el acreedor y el deudor.
Cabe mencionar también que, como se intima en el Art. 5 de la Ley Núm. 195, supra, el derecho a hogar seguro no es absoluto y está sujeto a una serie de excepciones enumeradas en su Art. 4. Estas son:
(a) En todos los casos donde se obtenga una hipoteca, que grave la propiedad protegida.
(b) En los casos de cobro de contribuciones estatales y federales.
(c) En los casos donde se le deban pagos a contratistas para reparaciones de la propiedad protegida.
(d) En los casos donde aplique el Código de Quiebras Federal, en cuyo caso aplicarán las disposiciones de dicho Código.
(e) En todos los casos de préstamos, hipotecas, contratos re-faccionarios y pagarés constituidos a favor de o asegurados u otorgados por la Puerto Rico Production Credit Association, Small Business Administration, la Autoridad para el Finan-ciamiento de la Vivienda de Puerto Rico, la Administración *638 Federal de Hogares de Agricultores, la Federal Home Administration (FHA), la Administración de Veteranos de Estados Unidos y el Departamento de Desarrollo Económico y Comer-cio de Puerto Rico; y las entidades sucesoras de los antes men-cionados, así como a favor de cualquier otra agencia o entidad estatal o federal que garantice préstamos hipotecarios que se aseguran y se venden en el mercado secundario. Art. 4 de la Ley Núm. 195, supra, 31 LPRA sec. 1858a.
Finalmente, la importancia y fortaleza que la Asamblea Legislativa quiso proveer al derecho a hogar seguro queda consagrada al establecerse que este es un derecho irrenunciable y que cualquier pacto en contrario se declarará nulo. Art. 4 de la Ley Núm. 195, supra.(2)
B. Visto el tipo de derecho que quiso consagrar la Asamblea Legislativa mediante la Ley Núm. 195, supra, pasemos a examinar la extensión y naturaleza del mismo.
Como veremos más adelante, existen dos (2) métodos principales mediante los cuales se puede reclamar el derecho a hogar seguro. Pero una vez un individuo designa una propiedad como su hogar seguro, el Art. 9 de la Ley Núm. 195, supra, 31 LPRA sec. 1858f, establece que “el Registrador de la Propiedad tendrá la obligación de anotar que tal propiedad fue así designada por su propietario”.
Mediante esta disposición estatutaria, unido a las disposiciones que proveen para la protección del hogar de los individuos, podemos apreciar claramente la intención *639 legislativa de crear un derecho individual que tiene acceso al Registro de la Propiedad en Puerto Rico. Es un principio conocido en nuestro ordenamiento que el “elemento sustancial que abre la puerta de la inscripción es que el derecho produzca el efecto jurídico real”. L.R. Rivera Rivera, Derecho registral inmobiliario puertorriqueño, 2da ed., San Juan, Jurídica Editores, 2002, pág. 398. Es decir, tienen acceso al Registro aquellos derechos personales que trascienden al individuo e incidan en bienes reales. Véase First Federal Savs. v. Registrador, 113 DPR 857, 861 (1983). Comúnmente se denomina este tipo de derechos como aquellos derechos personales con trascendencia real. Rivera Rivera, op. cit, pág. 399. Por ello, una vez se denomina que un derecho personal tiene efecto erga omnes, este tendrá acceso válido al Registro de la Propiedad. íd.
Precisamente el derecho a hogar seguro reconocido en la Ley Núm. 195, supra, es personal con trascendencia real. Ciertamente, es el individuo titular de una propiedad el que puede reclamarlo. Una vez decida hacerlo y este tiene acceso al Registro de la Propiedad, el derecho a hogar seguro adquiere una dimensión real y otra erga omnes.
Por un lado, el derecho surte un efecto real ya que va a la finca misma, la cual recibe una anotación marginal en el Registro de la Propiedad. Por el otro, crea un efecto erga omnes ya que el derecho a hogar seguro remueve del trá-fico comercial la propiedad protegida, quedando así fuera del alcance de los acreedores, con excepción de aquellos dispuestos en el Art. 4 de la Ley Núm. 195, supra. En cierto sentido, este derecho tiene el efecto de insular un bien específico del patrimonio de un deudor y removerlo del tráfico comercial en cuanto al cobro de ciertas deudas. A su vez, representa una limitación a lo dispuesto en el Art. 1811 del Código Civil en cuanto a que “[d]el cumpli-miento de las obligaciones responde el deudor, con todos sus bienes presentes y futuros”. 31 LPRA see. 5171.
*640 III
Examinado el ámbito de extensión y la importancia del derecho a hogar seguro establecido en la Ley Núm. 195, supra, pasemos a analizar el proceso mediante el cual la protección contenida en el derecho a hogar seguro se cons-tituye y cuáles son sus efectos regístrales. Ello en aras de resolver la controversia específica que presenta el caso de autos.
El Art. 9 de la Ley Núm. 195, supra, establece dos (2) formas en que los propietarios pueden reclamar su derecho a hogar seguro para con una de sus propiedades. Mediante la primera opción, los individuos pueden reclamar su derecho a hogar seguro en el mismo momento en que adquieran una propiedad. Para así hacerlo, basta con que el individuo lo haga constar en el título de adquisición.
La segunda manera de reclamar el derecho a hogar se-guro se refiere a aquellas instancias en que la finca ya esté inscrita a nombre del titular en el Registro de la Propiedad. Específicamente, el estatuto dispone, en lo per-tinente, lo siguiente:
En los casos donde la finca estuviere ya inscrita a nombre de dicho individuo o jefe de familia, bastará que el propietario o propietarios de la finca otorgue(n) un acta ante notario pú-blico, donde se haga constar que la finca tiene carácter de hogar seguro, para que el Registrador de la Propiedad con-signe tal carácter en nota marginal de la inscripción correspondiente. (Énfasis suplido). Art. 9 de la Ley Núm. 195, supra.
Precisamente es esta disposición la que debemos interpretar en el caso de autos. Ello debido a que una vez un Acta Notarial en la que se reclama el derecho a hogar seguro es presentada en el Registro de la Propiedad, todos los principios regístrales de nuestro ordenamiento se activan. Por ende, como todo negocio jurídico inscribible, *641 en el procedimiento de calificación el Registrador “[a]demás de cerciorarse de que el documento cumple con los requisitos formales, deberá determinar si los derechos son inscribibles”. Rivera Rivera, op. cit., pág. 284.
IV
En el caso de autos, no está en controversia que la pro-piedad que la peticionaria quiso proteger con su derecho a hogar seguro no es de su total dominio. La propiedad en la que ella reside consta inscrita en el Registro de la Propie-dad a nombre de ella y sus tres (3) hijos, toda vez que la misma forma parte de una comunidad hereditaria. Como vimos, la peticionaria compareció individualmente a la au-torización del Acta Notarial en la que requirió que se ano-tara su derecho a hogar seguro. La Registradora de la Pro-piedad entendió que esa Acta Notarial no cumplió con los requisitos formales que establece la Ley Núm. 195, supra, ni con el derecho aplicable a la comunidad hereditaria.
Según discutido, el texto del Art. 9 de la Ley Núm. 195, supra, establece que en casos como el de autos en que ya “la finca estuviere ya inscrita a nombre de dicho individuo o jefe de familia, bastará que el propietario o propietarios de la finca otorgue(n) un acta ante notario público [...]”. (Enfasis suplido). Vemos entonces que el propio texto de la Ley Núm. 195, supra, exige que cuando una propiedad tiene más de un titular registral, todos tienen que comparecer a la autoriza-ción del Acta Notarial en la que se reclama el derecho a hogar seguro.
No es para menos. Como hemos visto, el derecho que reconoció la Asamblea Legislativa en la Ley Núm. 195, supra es amplio y abarcador y tiene efectos de carácter real en cuanto a la propiedad. Se trata de un derecho que en cierto sentido remueve a la propiedad del tráfico jurídico cuando se trate del cobro exclusivamente de deudas. Un acto de esa naturaleza, que no es meramente un acto de *642 administración, requiere la comparecencia de todos los ti-tulares de la propiedad.
Además del texto de la Ley Núm. 195-2011, debemos recordar que aunque la comunidad hereditaria no está regulada específicamente en el Código Civil, hemos resuelto que a esta le aplican “las disposiciones generales sobre co-munidad de bienes que sean compatibles con el carácter universal de este tipo de comunidad”. Vega Montoya v. Registrador, 179 DPR 80, 88 (2010). Por eso el derecho de los titulares que están sujetos a una comunidad de bienes no es de tal extensión como el de un titular individual. A esos efectos, comenta el profesor Vélez Torres que
[e]n lo relativo a los derechos de los condómines sobre la cosa común, está presente la limitación que implica la presencia del derecho de cada comunero coexistiendo con el de los demás. De ahí que la extensión y efectividad del derecho de cada cual de-penda, necesariamente, de la extensión y efectividad de los de-rechos de los demás. Hay una situación de dependencia y sub-ordinación, pues allí donde empieza el derecho de un comunero termina el del otro. Vélez Torres, op. cit., pág. 150.
La representación legal de la peticionaria nos argumenta que si interpretamos que la Ley Núm. 195, supra, requiere que comparezcan todos los titulares al Acta Notarial que reclama el derecho a hogar seguro en una propiedad sujeta al régimen de comunidad de bienes, ello haría más difícil lograr anotar ese derecho a favor de un titular individualmente. Aunque es más difícil no es imposible. En casos como este, en que no hay evidencia del consenso entre los comuneros para reconocer el derecho a hogar seguro de uno de ellos, siempre se puede acudir al tribunal con el propósito de que se reconozca el derecho a hogar seguro al amparo del Art. 3 de la Ley Núm. 195-2011, supra, y se ordene su anotación en el Registro de la Propiedad. Después de todo, somos un tribunal de jurisdicción general y podemos entender en cualquier acción que presente una controversia legítima. Clases A, B y C v. PRTC, 183 DPR 666, 686 (2011); Mun. Arecibo v. Mun. Quebradillas, 161 *643 DPR 109, 114 (2004); Junta Dir. Cond. Montebello v. Fernández, 136 DPR 223, 230 (1994).
Por todo lo anterior, nos parece que el texto de la Ley Núm. 195, supra, y el derecho de comunidad de bienes exigen que en casos de propiedades con más de un dueño, todos los propietarios comparezcan a la autorización del Acta Notarial que reclama la anotación del derecho a ho-gar seguro.
V
De acuerdo con los fundamentos expuestos anterior-mente, procedemos a confirmar la determinación de la Re-gistradora de la Propiedad de la Sección III de Bayamón, la cual denegó la inscripción del derecho a hogar seguro de la peticionara reclamada en la Escritura Núm. 16 intitu-lada Acta de Edificación y Acta para Anotar Derecho a Ho-gar Seguro, la cual fue autorizada el 2 de octubre de 2012 en Bayamón ante el notario Luis J. Marín Rodríguez.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió con la expresión siguiente:
Concurro con el resultado por entender que tanto la Ley Núm. 195 de 13 de septiembre de 2013, conocida como la Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, como el derecho de comunidad de bienes exigen que para que se inscriba la anotación en el Registro de la Propiedad del derecho de hogar seguro en casos de propiedades con más de un dueño, se requiere que todos los propietarios comparezcan a la autorización del Acta Notarial. Ahora bien, existen unas lagunas en la ley que requieren que la Asamblea Legislativa atienda. Con el requisito que hoy adopta el Tribunal, traslucen una serie de interrogantes. Por ejemplo: En el caso de una propiedad que le pertenece a una comunidad hereditaria y que no tiene anotada la protección de hogar seguro, ¿a quién pro-tegería la anotación de la protección de hogar seguro? ¿Solo a la copropietaria con respecto a su participación independiente a la de la comunidad hereditaria, o a cada uno de los miembro *644 de la comunidad hereditaria? De anotarse la protección de ho-gar seguro solo a la copropietaria independiente de la comuni-dad hereditaria, ¿se podría embargar la participación de un coheredero? De permitirse este embargo, ¿no se estaría incum-pliendo con el propósito de la ley? Éstas son sólo algunas de las interrogantes que han quedado en el aire con la Opinión que emite el Tribunal. Exhorto a la Asamblea Legislativa a actuar prontamente para minimizar cualquier impacto nega-tivo en la protección de hogar seguro.
El Juez Presidente Señor Hernández Denton disintió con una opinión escrita, a la que se unió la Jueza Asociada Señora Fiol Matta.

 Apéndice del Alegato de la parte recurrida, pág. 14.

 Es importante mencionar que la Asamblea Legislativa decidió limitar el de-recho a hogar seguro a solo una propiedad por individuo. La razón para ello es evidente, ya que el derecho a hogar seguro existe para proteger aquella propiedad que sea utilizada como residencia principal por los propietarios. Además, la Ley Núm. 195-2011 (31 LPRA sec. 1858-1858k), estableció en su Art. 10 una penalidad criminal para evitar que los propietarios inscriban el derecho a hogar seguro en más de una de sus propiedades. Esa disposición lee:

“Penalidad por inscripción ilegal

“Incurrirá en delito grave de cuarto grado, toda persona que intente o logre inscribir en el Registro de la Propiedad la protección de hogar seguro en más de una finca de su propiedad o intente o logre inscribir a favor de otra persona la protección de hogar seguro, a la que ésta no tuviere derecho. Además, en los casos donde la persona se encuentre culpable de tal delito, ésta no tendrá derecho a hogar seguro sobre ninguna de las propiedades objeto de su actuación ilegal”. 31 LPRA sec. 1858g.