Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| WINDMAR RENEWABLE ENERGY, INC., PV PROPERTIES, INC. Y COTO LAUREL SOLAR FARM<br><br>**APELANTES**<br><br>v.<br><br>NEGOCIADO DE ENERGÍA DE PUERTO RICO<br><br>**APELADO** | KLAN202400589 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV07387<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente.

# SENTENCIA

En San Juan, Puerto Rico, a 22 de agosto de 2024.

## I.

El 13 de junio de 2024, Windmar Renewable Energy, Inc. (Windmar), PV Properties, Inc. (PV Properties) y Coto Laurel Solar Farm, Inc. (Coto Laurel) (en conjunto, parte apelante) presentaron un *Recurso de Apelación* por el cual solicitaron que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 6 de mayo de 2024, notificada y archivada digitalmente en autos el mismo día.[1] En el dictamen, el TPI dictaminó que, a tenor con el Artículo 6.4 de la *Ley de Transformación y ALIVIO Energético*, Ley Núm. 57 del 27 de mayo de 2014 (Ley Núm. 57-2014), según enmendada, 22 LPRA sec. 1054c, el Negociado de Energía de Puerto Rico (Negociado o parte apelada) posee jurisdicción primaria exclusiva para atender los asuntos sobre el incumplimiento con la política pública energética y

---

[1] Apéndice del recurso de apelación, Anejo 20, págs. 130-138.

las alegaciones respecto a los incumplimientos con la Ley Núm. 57-2014, *supra*, secs. 1051 *et seq.*, y la *Ley de Política Pública Energética de Puerto Rico*, Ley Núm. 17 del 11 de abril de 2019 (Ley Núm. 17-2019), según enmendada, 22 LPRA secs. 1141 *et seq.* En vista de ello, declaró ha lugar la *Solicitud de Desestimación*[2] de la parte apelada y desestimó la *Demanda*[3] del caso de marras por carecer de jurisdicción sobre la materia.

El 14 de junio de 2024, emitimos una *Resolución* donde le concedimos a la parte apelada hasta el 15 de julio de 2024 para presentar su alegato en oposición.

El 10 de julio de 2024, el Negociado presentó una *Solicitud de Breve Término* mediante la que solicitó un breve término adicional de diez (10) días laborables para presentar su alegación responsiva al auto de apelación.

Ante ello, el 11 de julio de 2024, emitimos una *Resolución* donde le concedimos un término final hasta el 29 de julio de 2024 para dicha presentación.

El 18 de julio de 2024, la parte apelante radicó una *Moción Informativa* por la que arguyó que la controversia desestimada por el foro primario era propensa a seguir ocurriendo. A esos efectos, peticionó que tomáramos conocimiento de una *Resolución* emitida el 16 de julio de 2024 por parte del Negociado intitulada *In re: Cálculo de Cargo Regulatorio para Compañías de Servicio Eléctrico* en un caso administrativo bajo el alfanúmero NEPR-MI-2020-0007 donde alegadamente se utilizó nuevamente el cálculo impugnado en el caso de marras.

También solicitó que tomáramos conocimiento del caso **Centro Unido Detallistas v. Com. Serv. Pub.**, 174 DPR 174 (2008), donde, alegó la parte apelante que, el máximo foro dispuso que las

---

[2] *Íd.*, Anejo 14, págs. 93-113.
[3] *Íd.*, Anejo 11, págs. 75-86.

sentencias declaratorias son el vehículo para impugnar la aplicación de un reglamento administrativo, tal como el reglamento impugnado; a saber, el Reglamento sobre la Enmienda al Reglamento Núm. 8618, sobre Certificaciones, Cargos Anuales y Planes Operacionales de Compañías de Servicio Eléctrico en Puerto Rico, Reglamento Núm. 8701, 17 de febrero de 2016, según enmendado por el Reglamento Núm. 9182, 24 de junio de 2020. Sostuvo además que obligarla a instar una querella ante el Negociado era un remedio inadecuado e infructífero. Por todo lo anterior, reiteró que no existía razón para que el foro primario no asumiera jurisdicción del pleito de epígrafe.

Por su parte, el 22 de julio de 2024, el Negociado presentó un *Alegato en Oposición a Apelación y Solicitud de Desestimación*. En síntesis, arguyó que la sentencia declaratoria y el interdicto no son los únicos remedios para revisar la validez de reglas administrativas, y que en ningún momento el Tribunal Supremo expresó que dicha validez podía revisarse exclusivamente ante el foro primario. Por el contrario, el Negociado expuso que la Ley Núm. 57-2014, *supra*, le concedió jurisdicción primaria exclusiva sobre los asuntos relacionados al incumplimiento con dicha ley y la política pública energética.

Argumentó además, que le advirtió a la parte apelante, mediante una *Resolución* emitida el 21 de junio de 2023, que cualquier reclamación en cuanto al cargo regulatorio tenía que realizarse de conformidad a los procedimientos adjudicativos establecidos en el Reglamento de Procedimientos Adjudicativos, Avisos de Incumplimiento, Revisión de Tarifas e Investigaciones, Reglamento Núm. 8543, 18 de diciembre de 2014.[4] Sin embargo, arguyó el Negociado que, la parte apelante optó por no valerse de

---

[4] *Íd.*, Anejo 9, págs. 67-70.

dichos procedimientos disponibles para obtener un remedio, sino que acudió directamente al TPI, en preterición del remedio administrativo exclusivo a su disposición. Ante lo anterior, sostuvo que el foro *a quo* actuó correctamente al desestimar el pleito de autos. Por último, expuso la parte apelada que la controversia reclamada en el caso de epígrafe debió de haberse presentado en contra de la Autoridad de Energía Eléctrica (AEE) o LUMA como la entidad encargada de cobrar el cargo regulatorio y no contra el Negociado.

El 23 de julio de 2024, emitimos una *Resolución* donde le concedimos a la parte apelada un término final hasta el 9 de agosto de 2024 para presentar su posición sobre los méritos del recurso, en atención a la alegación sobre la impugnación de la aplicación del reglamento en controversia.

El mismo 23 de julio de 2024, la parte apelante presentó una *Réplica a Alegato del NEPR* mediante la cual sostuvo que la controversia ante este foro versa sobre la interpretación de un estatuto y por ende, se trata de un asunto de inherencia exclusiva de la rama judicial, a tenor con ***Loper Bright Enterprises v. Raimondo***, 603 U.S. __ (2024) (donde el Tribunal Supremo de Estados Unidos determinó que, a tenor con el *Administrative Procedure Act* (APA), los tribunales no pueden otorgarle deferencia a la interpretación realizada por una agencia administrativa respecto a una ley solo porque dicho estatuto es ambiguo). Arguyó la parte apelante que, conforme a lo anterior, el tribunal no tiene razón para renunciar a su deber constitucional de adjudicar controversias. También alegó que no tiene obligación alguna de reclamarle a la AEE o LUMA, quien meramente desempeña un rol ministerial bajo la instrucción del Negociado.

Continuó exponiendo la parte apelante que el Negociado no ostenta jurisdicción primaria exclusiva sobre el caso de epígrafe,

pues la controversia no trata sobre un asunto de política pública energética ni requiere pericia del ente administrativo. Arguyó también que el Artículo 6.4 (c) de la Ley Núm. 57-2014, *supra*, sec. 1054c, no es claro en cuanto a la naturaleza de la jurisdicción del Negociado, pues, aunque el inciso (a) de dicho artículo le concede a la parte recurrida jurisdicción exclusiva, el inciso (b) le concede jurisdicción general a la misma y, por ende, el ente administrativo ostenta jurisdicción concurrente con el TPI. Por último, expuso que el Artículo 6.4, *supra*, sec. 1054c, tampoco prevé para querellas de los regulados en contra del Negociado.

El 24 de julio de 2024, el Negociado radicó una *Moción en Torno a "Réplica a Alegato del NEPR"* por la que solicitó que denegáramos la réplica de la parte apelante, alegando que dicha parte no podía presentar escritos posteriores a la apelación con fundamentos y argumentos que no fueron incluidos en dicho recurso, conforme a la Regla 16 (C)(2) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 16 (C)(2). Apoyó su posición además en la Regla 47 del Reglamento de este tribunal, *supra*, R. 47, alegando que la presentación de las réplicas requiere autorización previa del tribunal. En la alternativa, solicitó la concesión de un término para presentar su posición en torno a la réplica.

El 5 de agosto de 2024, emitimos una *Resolución* mediante la cual advertimos que no permitiremos la radicación de escritos adicionales, excepto lo ordenado en la *Resolución* emitida el 23 de julio de 2024.

El 9 de agosto de 2024, el Negociado presentó una *Moción en Cumplimiento de Orden*. En síntesis, la agencia administrativa solicitó que reconsideráramos la orden que requiere que se exprese sobre los méritos del recurso. En cambio, peticionó que este tribunal determine primero si el foro primario cometió un error al desestimar la demanda por falta de jurisdicción sobre la materia y de ser así,

devolvamos el caso al foro *a quo* para continuar los procedimientos del caso de epígrafe. Por lo que no cumplió con lo ordenado.

Tras un análisis objetivo, sereno y cuidadoso del expediente judicial apelativo, damos por perfeccionado el recurso. En adelante, pormenorizaremos los hechos procesales atientes al caso de autos.

**II.**

El caso de marras tiene su génesis el 2 de agosto de 2023 cuando la parte apelante presentó una *Demanda* sobre sentencia declaratoria en contra del Negociado.[5]

La parte apelante sostuvo que, el 29 de diciembre de 2022, el Negociado emitió una *Resolución* en el caso Núm. NEPR-MI-2020-0007, ***In re: Cálculo de Cargo Regulatorio para Compañías de Servicio Eléctrico***, por la cual estableció el cargo regulatorio aplicable a todas las compañías de servicio eléctrico para sustentar su presupuesto operacional estatutario para el Año Fiscal 2023-2024.[6] Ante ello, arguyó que, el 10 de marzo de 2023, PV Properties, Coto Laurel y Windmar comparecieron separadamente ante el Negociado y expusieron que, conforme al límite estatutario del 0.25% de los ingresos brutos dispuesto en el Artículo 6.16 (c) de la Ley Núm. 57-2014, *supra*, sec. 1054o, el pago máximo correspondiente era: $10,072.79 de PV Properties; $2,313.74 de Windmar; y $8,833.76 de Coto Laurel.[7]

La parte apelante alegó que, el 20 de marzo de 2023, el Negociado emitió otra *Resolución* donde reiteró su dictamen, y expresó que el máximo estatutario alegado por la parte apelante fue derogado tácitamente por la Ley Núm. 17-2019, *supra*, al añadirle el inciso (e) al Artículo 6.16 de la Ley 57-2014, *supra*, sec. 1054o, el

---

[5] *Íd.,* Anejo 11, págs. 75-86.
[6] *Íd.*, Anejo 1, págs. 1-4.
[7] *Íd.*, Anejo 2, págs. 5-7; *Íd.*, Anejo 3, págs. 8-10; *Íd.*, Anejo 4, págs. 11-13.

cual dispone que el presupuesto anual del Negociado será $20,000,000.00.[8]

Sostuvo la parte apelante que el Negociado emitió una *Resolución* el 21 de junio de 2023, mediante la cual expuso que los mecanismos de reconsideración y de revisión judicial ante este tribunal no estaban disponibles para la parte apelante, pues el procedimiento realizado fue meramente un cálculo y no uno adjudicativo.[9]

Por todo lo anterior, la parte apelante solicitó del foro primario que declarara que (1) el Negociado erró al concluir que el inciso (d) del Artículo 6.16, *supra*, sec. 1054o, quedó derogado por el inciso (e) de la Ley Núm. 17-2019, *supra*; (2) la imposición de un cargo regulatorio mayor al 0.25% de los ingresos brutos es contrario a derecho; y (3) que ordenara al Negociado a restituirle a la parte apelante el exceso impuesto en contravención al texto estatutario; a saber, $7,236.43 para PV Properties; $2,126.93 para Windmar; y $5,101.97 para Coto Laurel.

Posteriormente, el 6 de octubre de 2023, el Negociado presentó una *Solicitud de Desestimación* en la cual solicitó la desestimación de la demanda del caso de autos por falta de jurisdicción sobre la materia.[10] Arguyó ostentar jurisdicción primaria exclusiva, a tenor con el Artículo 6.4 de la Ley Núm. 57-2014, *supra*, sec. 1054c, para atender las controversias planteadas por la parte apelante por tratarse de alegaciones sobre incumplimientos con la Ley 17-2019, *supra*, y la Ley Núm. 57-2014, *supra*. Sostuvo también que la parte apelante acudió al Negociado, luego de transcurridos 71 días desde la notificación de la *Resolución* emitida el 29 de diciembre de 2023, sin haber entablado un proceso

---

[8] *Íd.*, Anejo 5, págs. 14-18.
[9] *Íd.*, Anejo 9, págs. 67-70.
[10] *Íd.*, Anejo 14, págs. 93-113.

adjudicativo previo ante el Negociado, a tenor con los requerimientos del Reglamento Núm. 8543-2014, *supra*. Lo anterior, aunque, según expuso, esta agencia administrativa ya le había apercibido a la parte apelante sobre la disponibilidad de dichos procedimientos mediante la *Resolución* emitida el 21 de junio de 2023.

El 30 de octubre de 2023, la parte apelante presentó una *Oposición a Moción de Desestimación* por la que solicitó la denegatoria de la solicitud de desestimación y que se resolviera el caso en los méritos.[11] Sostuvo además que la interpretación realizada por la parte apelada respecto al Artículo 6.4 de la Ley Núm. 57-2014, *supra*, sec. 1054c, adoleció de parcialidad. Expuso que en el caso de marras solo se requería determinar si la incorporación del inciso (e) al Artículo 6.16 de la Ley Núm. 17-2019, *supra*, sec. 1054o, derogó tácitamente el límite estatutario del cargo regulatorio de 0.25% establecido en el inciso (c). Por lo tanto, alegó que, al tratarse de una controversia de derecho, no se requería el *expertise* de la agencia, y consecuentemente, el tribunal ostenta jurisdicción para atender la controversia.

Luego de varios trámites procesales, el 6 de mayo de 2024, el TPI emitió una *Sentencia*, notificada y archivada en autos el mismo día, mediante la cual declaró ha lugar la solicitud de desestimación presentada por el Negociado y desestimó la demanda del pleito de epígrafe por carecer de jurisdicción sobre la materia.[12] El foro primario dictaminó que el Negociado posee jurisdicción primaria exclusiva para atender asuntos sobre el incumplimiento de la política pública energética y las alegaciones sobre incumplimientos con la Ley 17-2019, *supra*, y la Ley 57-2014, *supra*.

Insatisfecho con el dictamen, el 16 de mayo de 2024, la parte apelante presentó una *Solicitud de Reconsideración* donde alegó que

---

[11] *Íd.*, Anejo 15, págs. 114-122.
[12] *Íd.*, Anejo 20, págs. 130-138.

el Negociado no tiene jurisdicción primaria exclusiva para atender reclamaciones que impugnen la aplicación de sus reglamentos, si no que la misma recae sobre los tribunales.[13] Sostuvo que, aunque la solicitud de desestimación fue apoyada por el Artículo 6.4 de la Ley 57-2014, *supra*, sec. 1054c, y el foro primario dictaminó mediante la *Sentencia* recurrida que el Negociado ostenta la autoridad exclusiva para atender el incumplimiento con la política pública, la controversia no tuvo que ver con el cumplimiento o la implementación de la política pública energética. Por el contrario, alegó que las controversias sobre las cuales el Negociado tiene jurisdicción con prelación al tribunal son sobre los cobros realizados por las entidades reguladas. Reiteró que la causa de acción de la parte apelante versaba sobre un asunto de estricto derecho; dígase, si hubo una derogación tácita de la fórmula a utilizarse en el cálculo en controversia. Por último, sostuvo que no tenía sentido que un regulado tuviese que incoar una acción ante el Negociado para que la agencia misma determinase si había incumplido con la política pública energética. Ante ello, solicitó la reconsideración de la *Sentencia* recurrida.

El 21 de mayo de 2024, el TPI emitió una *Resolución*, notificada y archivada en autos el 22 de mayo de 2024, por la cual denegó la petición de reconsideración presentada por la parte demandante.[14]

Inconforme, el 13 de junio de 2024, la parte apelante presentó un recurso de apelación en contra del Negociado por el cual le imputó al TPI la comisión de los siguientes errores:

> **PRIMER ERROR: Erró el Tribunal de Primera Instancia al desestimar la solicitud de sentencia declaratoria a pesar de ser el mecanismo jurisprudencial establecido por el TSPR para la impugnación de reglamentos en su aplicación.**

---

[13] *Íd.*, Anejo 21, págs. 139-145.
[14] *Íd.,* Anejo 22, pág. 146.

**SEGUNDO ERROR: <u>Erró el TPI al desestimar la causa de acción a base de la doctrina de jurisdicción primaria exclusiva.</u>**

En cuanto al primer error, la parte apelante arguyó que el TPI debió tomar en cuenta que la sentencia declaratoria es el mecanismo reconocido para solicitar la nulidad de un reglamento cuando existe cualquier incumplimiento sustancial con las normas de aprobación de reglamentos instruidas por la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, conforme a ***Centro Unido Detallistas v. Com. Serv. Púb.***, supra. Sostuvo además que el Negociado no podía revocar el Reglamento Núm. 8701-2016, *supra*, sin cumplir con los siguientes requisitos: "(1) notificar al público la reglamentación que se aprobará; (2) proveer oportunidad para la participación ciudadana, que incluya vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente; y (4) publicar la reglamentación aprobada". ***Sierra Club v. Junta de Planificación***, 203 DPR 596, 606 (2019) (*citando a* LPAU, *supra*, secs. 9611–9613, 9618 y 9621).

En cuanto al segundo error señalado, alegó la parte apelante, en lo pertinente, que la controversia del pleito de marras no versa sobre un asunto de política pública que requiera pericia, y que la interpretación sobre el inciso (a) (3) del Artículo 6.4 de la Ley Núm. 57-2014, *supra*, sec. 1054c, fue una amplia.

Por su parte, el 22 de julio de 2024, el Negociado presentó un *Alegato en Oposición a Apelación y Solicitud de Desestimación.* En síntesis y en lo pertinente, arguyó que la Ley Núm. 57-2014, *supra*, le concedió al Negociado jurisdicción primaria exclusiva para atender los asuntos sobre el incumplimiento con la política pública energética y las alegaciones sobre los incumplimientos con la Ley Núm. 57-2014, *supra*, y la Ley Núm. 17-2019, *supra*.

Consiguientemente, sostuvo que el foro *a quo* actuó correctamente al desestimar el pleito de autos.

El 23 de julio de 2024, la parte apelante presentó una *Réplica a Alegato del NEPR* donde sostuvo, en lo pertinente que, la pregunta presentada ante este foro versa sobre la interpretación de un estatuto y, por lo tanto, se trata de un asunto de inherencia exclusiva de la rama judicial, a tenor con **Loper Bright Enterprises v. Raimondo**, supra. Además, expuso la parte apelante que la agencia no ostenta jurisdicción primaria exclusiva sobre el caso de epígrafe, pues la controversia no trata sobre un asunto de política pública energética ni requiere pericia del Negociado.

El 9 de agosto de 2024, el Negociado presentó una *Moción en Cumplimiento de Orden*. En síntesis, la agencia administrativa solicitó que reconsideráramos la orden que requiere que se exprese sobre los méritos del recurso. En cambio, peticionó que este tribunal determine primero si el foro primario cometió un error al desestimar la demanda por falta de jurisdicción sobre la materia y de ser así, devolvamos el caso al foro *a quo* para continuar los procedimientos del caso de epígrafe.

A continuación, pormenorizaremos el marco jurídico doctrinal para resolver el recurso ante nos.

**III.**

**A.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite que un demandado solicite del tribunal la desestimación de la demanda presentada en su contra, antes de contestar o por medio de la misma contestación a la demanda, bajo los siguientes fundamentos: (1) **falta de jurisdicción sobre la materia** o la persona; (2) insuficiencia del emplazamiento o de su diligenciamiento; (3) dejar de exponer una reclamación que justifique la concesión de un remedio; y (4) dejar de acumular una

parte indispensable. ***Colón Rivera, et al., v. ELA***, 189 DPR 1033, 1049 (2013); ***González v. Mayagüez Resort & Casino***, 176 DPR 848, 855 (2009). No obstante, "siempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito". Regla 10.8 (c) de Procedimiento Civil, *supra*, R. 10.8 (c); ***González v. Mayagüez Resort & Casino***, supra, pág. 855. Según lo anterior, se puede desestimar una reclamación por tratarse de la jurisdicción de una agencia administrativa o de la esfera federal, y, por lo tanto, bajo la Regla 10.8 (c) de Procedimiento Civil, *supra*, se les ordena a los tribunales estatales a desestimar la reclamación cuando surge ausencia de jurisdicción sobre la materia ante el foro aludido. ***González v. Mayagüez Resort & Casino***, supra, pág. 855.

### B.

La jurisdicción se ha definido como el poder o la autoridad que tienen los tribunales para considerar y resolver casos o controversias. ***MCS Advantage, Inc. v. Fossas Blanco***, 211 DPR 135, 144 (2023); ***Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc.***, 207 DPR 586, 600 (2021); ***Allied Management Group, Inc. v. Oriental Bank***, 204 DPR 374, 385 (2020); ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, 204 DPR 89, 101 (2020). Los tribunales de Puerto Rico poseen jurisdicción general, por lo cual "están facultados para atender cualquier reclamación que presente una controversia propia de adjudicación, siempre que tengan jurisdicción sobre la materia". ***Consejo de Titulares de 76 Kings Court Condominium v. MAPFRE PRAICO Insurance Company***, 208 DPR 1018, 1026 (2022).

La jurisdicción sobre la materia es aquella capacidad del tribunal para atender y resolver una controversia respecto a un aspecto legal. Íd. (*citando a* ***Rodríguez Rivera v. De León Otaño***, 191 DPR 700, 708 (2014)). Esta capacidad solo puede ser limitada por el

Estado y mediante la aprobación de leyes. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 101; *Consejo de Titulares de 76 Kings Court Condominium v. MAPFRE PRAICO Insurance Company*, supra, pág. 1026.

Es harto conocido que "la falta de jurisdicción sobre la materia no puede ser subsanada". *Consejo de Titulares de 76 Kings Court Condominium v. MAPFRE PRAICO Insurance Company*, supra, pág. 1027. Otras consecuencias que conllevan la ausencia de jurisdicción sobre la materia son que (i) las partes no pueden conferírsela voluntariamente a un tribunal como tampoco puede este otorgársela; (ii) conlleva la nulidad de los dictámenes emitidos; (iii) impone a los tribunales el deber ineludible de auscultar su propia jurisdicción; (iv) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde proviene el recurso; y (v) puede presentarse en cualquier etapa de los procedimientos, a instancia de las partes o por el tribunal *motu proprio*. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, págs. 101-102. Es por ello que los asuntos relacionados a la jurisdicción son privilegiados y se deben atender primero. *Allied Management Group, Inc. v. Oriental Bank*, supra, pág. 386. En otras palabras, cuando un tribunal determina que no ostenta jurisdicción para intervenir en un asunto, procede la inmediata desestimación del recurso. *Allied Management Group, Inc. v. Oriental Bank*, supra, págs. 386-387.

## C.

En esa misma línea, en nuestro ordenamiento jurídico existen unas normas de autolimitación judicial incluyendo la jurisdicción primaria y la de agotamiento de remedios administrativos. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 102; *Colón Rivera, et al., v. ELA*, supra. Estas doctrinas "cumplen el objetivo de mantener un adecuado balance y distribución de poder y tareas entre las agencias administrativas y el poder judicial".

*Colón Rivera, et al., v. ELA*, supra (*citando a* *Vélez Ramírez v. Romero Barceló*, 112 DPR 716, 722 (1982)).

En lo pertinente, la jurisdicción primaria no tiene que ver con el momento de la revisión judicial respecto a la acción administrativa, sino sobre el foro que atenderá el caso en primera instancia. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 102 (*citando a* D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 3ª ed. rev., Bogotá, Ed. Forum, 2013, pág. 562). Esto es, si le corresponde a la agencia administrativa o al tribunal intervenir primero en la controversia. *Colón Rivera, et al., v. ELA*, supra. Para que la norma de jurisdicción primaria sea de aplicación, "deberá ser categóricamente concedida en la ley". J. A. Echevarría Vargas, Derecho Administrativo Puertorriqueño, 5ª ed. rev., San Juan, Ed. Situm, 2023, pág. 81. De ese modo, "cuando una ley expresamente le confiere la jurisdicción a una agencia administrativa, o ello surge del mismo por implicación necesaria, los tribunales no tendrán autoridad para dilucidar la controversia en primera instancia". Íd.; *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 677 (2009); *Clases A, B y C v. PRTC*, 183 DPR 666, 686 (2011); *Junta de Dir. Cond. Montebello v. Fernández*, 136 DPR 223, 230 (1994). Sin embargo, nunca se le podrá privar a los tribunales de jurisdicción original en aquellos casos donde se planteen derechos constitucionales y se demuestre que existen posibilidades reales de prevalecer. *Echevarría Vargas*, *op. cit.*, *pág. 82*; *First Fed. Savs. v. Asoc. de Condomines*, 114 DPR 426 (1983).

Esta norma sobre jurisdicción primaria consiste en dos (2) vertientes; a saber, la jurisdicción primaria concurrente y la jurisdicción primaria exclusiva. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 102.

La jurisdicción primaria concurrente presupone que tanto el foro judicial como el administrativo ostentan jurisdicción para

entender la controversia. Íd., pág. 103 (*citando a Fernández Quiñones, op. cit., pág. 574*). En dichos casos, la facultad jurisdiccional será compartida entre el ente administrativo y los tribunales, y será el promovente quien tomará la decisión sobre el foro al cual acudirá. *Echevarría Vargas, op. cit., pág. 85.* Como norma general, los tribunales deben aplicar la norma de abstención en casos en los cuales el peritaje de la agencia administrativa sea indispensable para resolver la controversia, pues "tribunales [son] de justicia y no centros académicos para dirimir sutilezas técnicas". **Báez Rodríguez v. E.L.A.**, 179 DPR 231, 240 (2010) (*citando a* **Ortiz v. Panel F.E.I.**, 155 DPR 219, 244 (2001)). Por el contrario, si las controversias ante el foro judicial no requieren del peritaje o el conocimiento especializado de la agencia, el tribunal no tiene razón para abstenerse de ejercer su autoridad para atender el asunto ante su consideración. **Báez Rodríguez v. E.L.A.**, supra, pág. 240. Además, existen instancias en las que "se puede litigar el expertise en la agencia y simultáneamente presentar una reclamación en compensación por daños ante el tribunal. En esas ocasiones de fragmentación de las causas de acción, el procedimiento en el tribunal se paralizará hasta que el foro administrativo resuelva la controversia". *Echevarría Vargas, op. cit., pág. 85.*

No obstante, cuando el estatuto del ente administrativo le confiere expresamente la jurisdicción a la agencia, entonces ya se trata de una jurisdicción primaria exclusiva o estatutaria. Íd.; **Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico**, supra, pág. 102. (Énfasis suplido). La jurisdicción primaria exclusiva conferida al organismo "no admite ningún otro medio de solución, ajuste o prevención". **Rodríguez Rivera v. De León Otaño**, supra, pág. 709. Lo anterior pues, la asamblea legislativa expresamente le confirió al ente administrativo la jurisdicción exclusiva, y bajo esa circunstancia, estamos ante un mandato legislativo y no frente a una

doctrina de índole jurisprudencial. ***Báez Rodríguez v. E.L.A.***, supra, pág. 240. Por lo tanto, "los tribunales quedan excluidos de intervenir en primera instancia en las materias o los asuntos sobre los cuales se le ha conferido la jurisdicción exclusiva a una agencia". ***Rodríguez Rivera v. De León Otaño***, supra, pág. 709.

De igual modo, nuestro más alto foro expresó que "[l]a aplicación de la doctrina de jurisdicción primaria exige que los tribunales emprendan la tarea de examinar los alcances de la ley habilitadora de una agencia y determinar si el asunto cae estrictamente dentro de su ámbito". ***Consejo Titulares v. Gómez Estremera***, 184 DPR 407, 430 (2012). Además, es menester analizar los poderes otorgados expresamente a la agencia administrativa mediante su ley habilitadora, al igual que los poderes indispensables para llevar a cabo las facultades y funciones conferidas. ***Muñoz Barrientos v. Estado Libre Asociado de Puerto Rico***, 212 DPR 714, 727 (2023); ***Consejo Titulares v. Gómez Estremera***, supra, pág. 430.

Consiguientemente, la norma de jurisdicción primaria no es una camisa de fuerza y ante ciertas situaciones se ha reconocido su inaplicabilidad. ***Consejo Titulares v. Gómez Estremera***, supra, pág. 430; ***Ortiz v. Panel F.E.I.***, supra, pág. 246. Específicamente no aplica cuando "[l]a naturaleza de la causa de acción presentada y el remedio solicitado destacan que no se presentan cuestiones de derecho que exijan el ejercicio de discreción y de peritaje administrativo, es decir, cuando la cuestión que se plantea sea puramente judicial". ***Consejo Titulares v. Gómez Estremera***, supra, pág. 430-431 (*citando a* D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2ª ed. rev., Bogotá, Ed. Forum, 2001, págs. 443-444).

Una agencia administrativa "solo puede determinar 'los derechos privados y las obligaciones de aquellos que están sujetos a

su ámbito jurisdiccional'". ***Muñoz Barrientos v. Estado Libre Asociado de Puerto Rico***, supra, pág. 727 (*citando a Fernández Quiñones, op. cit., 3ª ed. rev., pág. 35*). Por lo tanto, el ente está vedado de asumir jurisdicción sobre ningún tipo de actividad para lo que no esté claramente autorizada por ley. ***Colegio de Médicos Cirujanos de Puerto Rico v. Academia de Medicina de la Familia***, 201 DPR 362, 372 (2018); ***Ayala Hernández v. Consejo Titulares***, 190 DPR 547, 559 (2014). Asimismo, el estatuto no puede ser sustituido por la necesidad, ni la utilidad ni la conveniencia respecto a la fuente de poder de una agencia administrativa. ***Muñoz Barrientos v. Estado Libre Asociado de Puerto Rico***, supra, pág. 727; ***Pérez López y Otros v. CFSE***, 189 DPR 877, 883-884 (2013). Cualquier duda sobre la existencia de ese poder, debe resolverse en contra de ese ejercicio. ***Torres Pagán v. Mun. de Ponce***, 191 DPR 583, 604 (2014); ***Amieiro González v. Pinnacle Real Estate Home Team***, 173 DPR 363, 371-372 (2008) (*citando a **Raimundi v. Productora***, 162 DPR 215, 225 (2004)).

### D.

Adviértase que, se estableció la Ley Núm. 57-2014, *supra*, para "fomentar la operación y administración de un sistema eficiente y de costos justos y razonables". Exposición de Motivos de la Ley Núm. 57-2014, *supra*. Para lograr dicho propósito, el Negociado posee varios poderes y deberes incluyendo el de "[f]iscalizar y asegurar la cabal ejecución e implementación de la política pública sobre el servicio eléctrico en Puerto Rico". Íd., sec. 1054b. En esa misma línea, el Negociado impondrá y cobrará cargos conforme a lo dispuesto en el Artículo 6.16 de la Ley Núm. 57-2014, *supra,* sec. 1054o, con el fin de producir ingreso suficiente para cubrir gastos operacionales y administrativos del Negociado.

Asimismo, el inciso (b) del Artículo 6.16 de la Ley Núm. 57-2014, *supra,* sec. 1054o, y la Sección 4.03 del Reglamento Núm.

9182-2020, *supra,* disponen el procedimiento a seguir para determinar el cargo regulatorio. Según el inciso (b), el Negociado fijará proporcionalmente el cargo anual conforme a los ingresos brutos producidos por las personas bajo su jurisdicción provenientes de la prestación de servicios eléctricos o de transporte, según determinado por el Negociado. Además, "[e]stos cargos serán pagados al Negociado de Energía sobre bases trimestrales, de conformidad con el reglamento que esta promulgue. El Negociado de Energía revisará anualmente el cargo que, a tenor con este inciso, se impondrá a las personas bajo su jurisdicción". Ley Núm. 57-2014, *supra,* sec. 1054o. (Énfasis suplido). A esos efectos, la Sección 4.03 del Reglamento Núm. 9182-2020, *supra,* dispone el procedimiento a seguir para calcular el cargo regulatorio:

A)  El Negociado de Energía calculará un cargo regulatorio para toda Compañía de Servicio Eléctrico, basado en los Ingresos Brutos que haya generado durante cada Año Natural.

1) Se calculará un factor de prorrata para cada Compañía de Servicio Eléctrico, incluyendo la AEE, dividiendo el ingreso para cada Año Natural de cada Compañía de Servicio Eléctrico, incluyendo la AEE entre la suma de los Ingresos Brutos Anuales de todas las Compañías de Servicio Eléctrico, incluyendo la AEE.

2) El cargo regulatorio para cada Compañía de Servicio Eléctrico será el producto de la cantidad presupuestada anualmente para el Negociado de Energía- veinte millones de dólares ($20,000,000.00)- y el factor de prorrata establecido por el Negociado de Energía en el párrafo (1) anterior.

B)  Dentro del término de treinta (30) días contados a partir de la fecha en que las compañías presenten su informe de Ingresos Brutos Anuales, el Negociado de Energía determinará el cargo regulatorio que la AEE tendrá derecho a facturarle- en dos partidas semi anuales- y cobrarle a cada una de las Compañías de Servicio Eléctrico. El Negociado de Energía notificará a las Compañías de Servicio Eléctrico respecto al cargo regulatorio correspondiente mediante una Resolución emitida a tales fines.

C)  Dentro del término de treinta (30) días, contados a partir de la notificación de la Resolución descrita

en el párrafo (B) anterior, las Compañías de Servicio Eléctrico remitirán a la AEE las cantidades correspondientes al cargo regulatorio, según el procedimiento establecido por la AEE.

. . . .

La asamblea legislativa también determinó expresamente, en el Art. 6.4 de la Ley Núm. 57-2014, *supra*, la jurisdicción exclusiva que ostenta el Negociado para atender casos y controversias sobre el incumplimiento con la política pública energética:

**(a) El Negociado de Energía tendrá jurisdicción primaria exclusiva sobre los siguientes asuntos**:
**(1)** La aprobación de las tarifas y cargos que cobren las compañías de energía o un productor independiente de energía en relación con cualquier servicio eléctrico, al amparo de lo dispuesto en el Artículo 6.25 de esta Ley, así como los casos y controversias relacionadas con las tarifas que cobren las compañías de energía a sus clientes residenciales, comerciales o industriales, y sobre los casos y <u>controversias relacionadas</u> con las tarifas <u>y cargos de cualquier productor independiente de energía</u> .
**(2)** Los casos y controversias relacionadas con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica.
**(3) Los casos y controversias en las que se plantee el incumplimiento con la política pública energética del Gobierno de Puerto Rico según expresada en la "Ley de Política Pública Energética de Puerto Rico" y el derecho vigente.**
**(4)** Los casos y controversias en las que se plantee el incumplimiento con cualquiera de los mandatos establecidos en la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como la "Ley de la Autoridad de Energía Eléctrica" y con cualquiera de los mandatos establecidos en la "Ley de Política Pública Energética de Puerto Rico", en relación con el servicio eléctrico o en relación con asuntos energéticos.
**(5)** Los casos y controversias sobre trasbordo de energía eléctrica o interconexión con la red de transmisión y distribución, y toda persona que esté, o interese estar, conectada a la red de energía eléctrica en Puerto Rico o toda persona con un interés directo o indirecto en esos servicios de energía eléctrica.
**(6)** Los casos y controversias que surjan en relación con contratos entre la Autoridad, su sucesora, o el Contratante de la red de transmisión y distribución, los productores independientes de energía y las compañías de energía, así como sobre los casos y controversias entre productores independientes de energía. Esto incluirá, pero no se limitará, a los contratos de compraventa de energía mediante los cuales un productor independiente de energía se

disponga a proveer energía a una compañía de energía para ser distribuida, y a los casos en que se cuestione la razonabilidad de las tarifas de interconexión, o la razonabilidad de los términos y condiciones de un contrato de compra de energía.

. . . .

Ley Núm. 57-2014, *supra*, sec. 1054c. (Énfasis y subrayado nuestro).

Cónsono con lo anterior, el Artículo 6.18 de la Ley Núm. 57-2014, *supra*, sec. 1054q, atiende el proceso a seguir para comenzar un caso ante el Negociado:

**El Negociado de Energía de Puerto Rico establecerá un sistema de radicación electrónica a través del cual las personas puedan acceder a un portal de Internet para presentar los documentos correspondientes para iniciar un caso ante el NEPR, las partes puedan presentar todos los escritos y documentos relacionados con el trámite procesal de sus casos, y el NEPR pueda notificar a las partes sus órdenes y resoluciones.** Con el objetivo de facilitar el acceso al sistema de radicación electrónica a las personas que no tengan los medios o las destrezas para poder radicar documentos a través del portal de Internet, el NEPR, otorgará acuerdos interagenciales con cualquier instrumentalidad pública del Gobierno de Puerto Rico o con organizaciones sin fines de lucro, para que dichas entidades asistan al público que acuda a sus oficinas centrales o regionales en el manejo del portal de Internet y en el proceso para radicar documentos a través del sistema de radicación electrónica, y permitan al público el uso de una o más computadoras para llevar a cabo la radicación electrónica. (Énfasis suplido).

**IV.**

En el caso de marras, el TPI emitió una *Sentencia* en la cual declaró ha lugar la solicitud de desestimación presentada por la parte recurrida, y consecuentemente, desestimó la demanda. Apoyó dicho dictamen en que, conforme al Artículo 6.4 de Ley Núm. 57-2014, *supra*, sec. 1054c, el Negociado ostenta jurisdicción primaria exclusiva para atender los asuntos sobre el incumplimiento con la política pública y las alegaciones sobre incumplimientos con la Ley Núm. 17-2019, *supra*, y la Ley Núm. 57-2014, *supra*.

Inconforme, la parte apelante planteó que el foro primario erró al desestimar la causa de acción del caso de marras a base de la

doctrina de jurisdicción primaria exclusiva, a pesar de que la solicitud de sentencia declaratoria es el mecanismo jurisprudencial establecido por nuestro máximo foro para la impugnación de reglamentos.

Tras un análisis objetivo y cuidadoso de la totalidad del expediente ante nuestra consideración, en correcta práctica jurídica apelativa, resolvemos que el TPI no incurrió en error, perjuicio, parcialidad ni abusó de su discreción al desestimar la demanda del caso de marras. Por el contrario, la determinación apelada es correcta en derecho.

Como pormenorizamos en la sección anterior, la jurisdicción primaria exclusiva conferida al organismo implica que "los tribunales quedan excluidos de intervenir en primera instancia en las materias o los asuntos sobre los cuales se le ha conferido la jurisdicción exclusiva a una agencia". *Rodríguez Rivera v. De León Otaño*, supra, pág. 709.De igual modo, esta norma "no admite ningún otro medio de solución, ajuste o prevención". Íd. Lo anterior pues, la asamblea legislativa expresamente le confirió al ente administrativo la jurisdicción exclusiva, y bajo esa circunstancia, estamos ante un mandato legislativo y no frente a una doctrina de índole jurisprudencial. *Báez Rodríguez v. E.L.A.*, supra, pág. 240.

Por lo tanto, "[l]a aplicación de la doctrina de jurisdicción primaria exige que los tribunales emprendan la tarea de examinar los alcances de la ley habilitadora de una agencia y determinar si el asunto cae estrictamente dentro de su ámbito". *Consejo Titulares v. Gómez Estremera*, supra, pág. 430. Además, es menester analizar los poderes otorgados expresamente a la agencia administrativa mediante su ley habilitadora, al igual que los poderes indispensables para llevar a cabo las facultades y funciones conferidas. *Muñoz Barrientos v. Estado Libre Asociado de Puerto Rico*, supra, pág. 727; *Consejo Titulares v. Gómez Estremera*, supra, pág. 430.

En el presente caso, luego de examinar cuidadosamente la intención legislativa, es innegable que el Negociado debe atender con exclusividad y en primera instancia la controversia sobre el cómputo del cargo regulatorio impuesto a las compañías del sistema eléctrico. Por un lado, surge del Artículo 6.16 de la Ley Núm. 57-2014, *supra*, sec. 1054o, que el Negociado impondrá y cobrará cargos conforme a dicho artículo. Por el otro lado, la asamblea legislativa determinó expresamente que el Negociado tendrá **jurisdicción primaria exclusiva** sobre "(3) [l]os casos y controversias en las que se plantee el incumplimiento con la política pública energética del Gobierno de Puerto Rico según expresada en la 'Ley de Política Pública Energética de Puerto Rico' y el derecho vigente". Ley Núm. 57-2014, *supra*, sec. 1054c. Nótese que el concepto de política pública es amplio y puede abarcar la imposición y el cobro de los cargos regulatorios que le corresponden pagar a las compañías reguladas del servicio eléctrico. Adviértase además que el Artículo 6.18 de la Ley Núm. 57-2014, *supra*, sec. 1054q, expresamente dispone que se utilizará un sistema de radicación electrónica para que las personas puedan acceder a un portal de internet con el propósito de presentar "los documentos correspondientes para iniciar un caso ante el NEPR, las partes puedan presentar todos los escritos y documentos relacionados con el trámite procesal de sus casos, y el NEPR pueda notificar a las partes sus órdenes y resoluciones".

En el presente caso, el foro *a quo* actuó correctamente al resolver que el Negociado ostenta jurisdicción primaria exclusiva sobre la controversia ante nos, por lo cual la parte apelante deberá presentar en primera instancia un caso ante dicho ente administrativo para su determinación. Una vez se cumpla con la formalidad del trámite administrativo, de no estar conforme con el resultado, tendrá la oportunidad de presentar su reclamo al foro judicial.

Ante ausencia de error, pasión error, perjuicio, parcialidad y abusó de discreción en el presente caso, procede concederle deferencia al hermano foro primario, y, consecuentemente, confirmar la *Sentencia* apelada.

## V.

Por todo lo antes expuesto, se *confirma* la *Sentencia* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones